2002 WY 123

**H.R. WAGSTAFF and Evelyn Wagstaff,**
**Appellants (Petitioners),**

v.

**SUBLETTE COUNTY BOARD OF**
**COUNTY COMMISSIONERS,**
**Appellee (Respondent),**

and

**Grindstone Cattle Company, Appellee**
**(Intervener/Respondent).**

No. 01–81.

Supreme Court of Wyoming.

Aug. 20, 2002.

James K. Lubing of James K. Lubing Law Office, Jackson, WY, Representing Appellants.

Dale Aronson, Sublette County Attorney, Pinedale, WY, Representing Appellee Sublette County Bd. of County Comm'rs.

Sharon M. Rose of Lavery & Rose, P.C., Evanston, WY, Representing Appellee Grindstone Cattle Co.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] We review the actions of appellee, Sublette County Board of County Commissioners ("Board"), establishing a private road and assessing damages. We reverse and remand for an amended determination on damages, but otherwise affirm.

---

* Chief Justice at time of oral argument.

## ISSUES

[¶ 2] Appellants, H.R. Wagstaff and Evelyn Wagstaff ("Wagstaffs"), set forth the following issues:

1. The Sublette County Board of County Commissioners' order granting a private road was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law since the "Scott's Place" property has an outlet to, and connection with, a public road.

2. The Sublette County Board of County Commissioners' order amending the viewers' report as to the road width was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and otherwise not in accordance with law.

3. The Sublette County Board of County Commissioners' $10,000 damage assessment and analysis of damages generally was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and otherwise not in accordance with law.

## FACTS

[¶ 3] Grindstone Cattle Company ("GCC") owns a piece of real property which is commonly known as "Scott's Place" and another parcel of real estate which is north and west of Scott's Place and is separated from Scott's Place by a strip of land owned by the State of Wyoming and the Bureau of Land Management ("BLM"). Wagstaffs own real property that adjoins Scott's Place to the south. A title search established there are no easements or rights of way of record evidencing any legally enforceable access to Scott's Place. While State Route 354 runs through Wagstaffs' property, it does not run through Scott's Place. For over fifty years, GCC and its predecessors have had permissive use of a mile long roadway traversing Wagstaffs' land to access their property from State Route 354.

[¶ 4] In June 1998, pursuant to Wyo. Stat. Ann. §§ 24-9-101 through -103 (Lexis 1999), GCC filed a petition with the Board to establish a thirty foot wide private road

along the existing road on the Wagstaff property. At a September 15, 1998 hearing, the Board appointed viewers and appraisers. In the ensuing report, the viewers and appraisers recommended the private road be located along the existing mile long roadway, limiting the width of a portion of that private road to twenty feet. They assessed damages in the amount of $50,000.00.

[¶ 5] On March 2, 1999, the Board held a hearing on the report and received testimony from two of the viewers and two other witnesses. One of the witnesses, a contractor, assessed the increased cost for the Wagstaffs to maintain an existing irrigation ditch adjacent to and encroaching into the roadway at $20,000.00. Another witness, an appraiser, assessed a $16,682.00 damage estimate related to the devaluation of Wagstaffs' property and the loss of land under the easement. Finally, the viewers' testimony established that the $50,000.00 damage estimate contained within their report was not performed using a "before and after" analysis.

[¶ 6] The Board again met on March 16, 1999, to consider those issues presented by the petition for the private road. Ultimately the Board, in its Order Amending and Adopting Viewers Report and Conditional Declaration of Private Road, ordered that the established private road be at a width of thirty feet over the entirety of the length along the existing road and assessed damages in the amount of $10,000.00. Wagstaffs filed a Petition for Review before the district court, which affirmed the Board's action. Wagstaffs now appeal that decision.

## STANDARD OF REVIEW

[¶ 7] We review the administrative order issued by the Board as if it had come directly to this court from the Board. *Dunning v. Ankney*, 936 P.2d 61, 63 (Wyo. 1997) (citing *State ex rel. Workers' Compensation Div. v. Fisher*, 914 P.2d 1224, 1226 (Wyo.1996)). We examine the entire record to determine whether substantial evidence supports the administrative agency's findings of fact. We may not substitute our judgment for that of the agency when substantial evidence supports its decision. *Dunning*, at 63 (citing *Celotex Corp. v. Andren*, 917 P.2d 178, 180 (Wyo.1996)). "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions." *Dunning*, at 63 (quoting *Latimer v. Rissler & McMurry Co.*, 902 P.2d 706, 709 (Wyo.1995)). We do not, however, defer to an agency's conclusions of law. If the correct rule of law has not been correctly applied, the agency's errors are to be corrected. *Dunning*, at 63; *see also generally, Mayland v. Flitner*, 2001 WY 69, ¶ 10, 28 P.3d 838, ¶ 10 (Wyo.2001) and *Miller v. Bradley*, 4 P.3d 882, 886 (Wyo.2000).

## DISCUSSION

### Establishment of Private Road

[¶ 8] Wagstaffs contend that the Board's decision to establish a private road in this case was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law since GCC's property has an outlet to, and connection with, a public road. The Board received evidence of other possible routes to the Scott's Place property. County Road 150, the "Pape Road," to the east of Scott's place, was deemed not to be a viable option because the Green River lies between Scott's Place and the Pape Road, and there is no existing access without bridging across the river. The only other possible means of access would be from the west and north, which would require traveling an extra 35 miles on State Route 354, County Road 112, and County Road 115, and then traversing an additional 15 miles over dirt tracks across state and BLM property.

[¶ 9] Foundation for our review is found in Wyo. Stat. Ann. § 24–9–101 (Lexis 1999) [1]:

Any person whose land has no outlet to, nor connection with, a public road, may apply in writing to the board of county commissioners of his county for a private road leading from his premises to some convenient public road.... At the hearing, all parties interested may appear and be

---

1. We note that the legislature amended this statute in 2000, clarifying the procedures to establish a private road.

heard by the board as to the necessity of the road and all matters pertaining thereto. Upon the hearing of the application, whether the owner or others interested appear or not, if the board finds that the applicant has complied with the law and that the private road is necessary, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet ... on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby.... The viewers shall then proceed to locate and mark out a private road in accordance with the application or in such other manner and location they deem appropriate.... The proposed road shall not exceed thirty (30) feet in width from a certain point on the premises of the applicant to some certain point on the public road, and shall be located so as to do the least possible damage to the lands through which the private road is located. The viewers shall also at the same time assess the damages sustained by the owner over which the road is to be established and make full and true returns, with a plat of the road to the board of county commissioners.

[¶ 10] We have previously discussed the statutory requirement of "necessity":

We agree with the district judge that the county commissioners' finding that the road was not "necessary" was unsupported by the evidence. The evidence clearly demands the opposite conclusion. We hold that any person whose land is so situated that it has no outlet—no legally enforceable means by which he can gain access—has demonstrated necessity, as a matter of law, without there being a further need to show that he lives on that land or that it is being, or will be, used for some specific purpose nor was it proper to inquire into impact on adjoining owners (other than the owners whose land will be taken), financial interest of applicants, use for hunting, fences and improvements, or whether permissive access had been denied. *In our view, the word "necessary" in the statute refers only to the lack of the type of outlet*

*we have described to a "convenient" public road.*

Gold v. Board of County Comm'rs of Teton County, 658 P.2d 690, 694 (Wyo.1983) (quoting *McGuire v. McGuire*, 608 P.2d 1278, 1286 (Wyo.1980)); *see also Walton v. Dana*, 609 P.2d 461, 463–64 (Wyo.1980).

[¶ 11] Specifically, in *Walton*, at 464, we found in support of our holding that the Danas had met their burden of proof of necessity under the statute:

There is presently a road connecting the Dana land with U.S. Highway 89 *but they have no enforceable right to its use; so that road, therefore, cannot be considered an outlet. There is no "convenient" way across the grantors' land because of swamps and a canal. The distance to the Muddy String Road of one and one half miles, as compared to a distance of only one-quarter of a mile to U.S. Highway 89 is a further measure of convenience.*

(Emphasis added.) We also recognized in *Walton*, as we did in *Snell v. Ruppert*, 541 P.2d 1042 (Wyo.1975), that Wyo. Stat. Ann. § 24–9–101 offers complete relief to the landowner who has no outlet from his land and that there was no requirement therein that a petitioner for a private road must overcome every obstacle standing in his way, regardless of the expense and impracticability if he has a common law way of necessity which he can claim. Thus, we held that it is not a condition precedent to proceeding under § 24–9–101 that a landlocked owner must first proceed under any common law way of necessity he may have.

[¶ 12] In *Martens v. Johnson County Bd. of Comm'rs*, 954 P.2d 375, 380 (Wyo.1998), we clarified:

In ascertaining the legislative intent from the language of the statute [Wyo. Stat. § 24–9–101], *we have noted that the legislature intended the procedure under the statute to provide in a local forum a readily available, economically affordable, and time efficient method to obtain a means of access to property. McGuire v. McGuire*, 608 P.2d 1278, 1288 (Wyo.1980). We have also stated that an application for a private road under Wyo. Stat. § 24–9–

101 must be brought in good faith, and *that it was the legislature's intent that convenience and reason should prevail in the establishment of roads.... Dunning,* 936 P.2d at 64–65; *Lindt v. Murray,* 895 P.2d 459, 462 (Wyo.1995); *McGuire,* 608 P.2d at 1286.... *A landlocked property owner cannot be forced "to choose a wholly illogical, uneconomic, and unproductive road." [Dunning,* at 65] (quoting *Ferguson Ranch, Inc. v. Murray,* 811 P.2d 287, 290 (Wyo.1991)).

(Emphasis added.)

[¶ 13]   Finally, we have explicitly enumerated that there is no requirement in § 24-9-101 that a petitioner for a private road must overcome every obstacle standing in his way, regardless of the expense and impracticability, *Miller v. Bradley,* at 887 (citing *Walton* at 463); *see also Mayland v. Flitner,* ¶ 26, or that a landowner needs initially to proceed under any common law way of necessity he may have.   Accordingly, any apparent argument asserted to the contrary by the Wagstaffs lacks merit.

[¶ 14]   Wagstaffs further argue that because GCC has an outlet and connection with a public road across two unimproved dirt tracks extending over State and BLM property, GCC cannot show that its property is landlocked which would necessitate a private road to be established.   In a related argument, Wagstaffs also claim that the Board's finding that GCC has no outlet to a convenient road and that the aforementioned unimproved dirt tracks did not constitute "public" roads were made in error as a matter of law.   We decline to so hold recognizing there are facts and applicable authority which require a contrary result.

[¶ 15]   In addressing the possible means of access to GCC's property, evidence was received by the Board that a route to the east of that property to County Road 150, known as the "Pape Road" was unfeasible since there was no existing access to the Pape Road and the Green River laid between the GCC property and the Pape Road. Therefore, this route, among other things, would require GCC to built a bridge over the Green River.   Additional evidence was presented that the only other possible means of access to Scott's Place would be from the west and north which would require additional travel of 35 miles on State Route 354, County Road 112 and County Road 115 to the other parcel owned by GCC and then traversing several additional miles over dirt tracks across State and BLM property.   The evidence revealed that County Road 115, for a distance of approximately 15 miles on this route, was not maintained during the winter months; and the dirt tracks located upon the State and BLM property were not maintained at any time, were solely passable in the summer months at a slow rate of speed, and were only used occasionally by hunters and not the general public.

[¶ 16]   Wagstaffs further argue, relying on the case of *McGuire,* 608 P.2d at 1287–88, that the unimproved dirt tracks on the State and BLM land must be considered public roads which give GCC access to Scott's Place.   The affidavit of Edwin R. James, President and Manager of First American Title Insurance Company of Sublette County, who is licensed by the State of Wyoming to issue title insurance, established that upon his review of the applicable land title records, that there was nothing within those records to establish that GCC had a documented right of access to the Scott's Place property. Further, although the title policy issued by First American Title lists this route as an exception, this does not conclusively establish that the route upon the State and BLM land is legally accessible by GCC.

[¶ 17]   We also find that the case of *McGuire* as to its ruling regarding public roads is distinguishable from this case.   No evidence was presented to the Board concerning GCC's access via this route other than that mentioned above, whereas in *McGuire,* the evidence disclosed that the public had traversed the BLM road for many years.   In addition, a realty specialist from the BLM testified in *McGuire* that any United States citizen may travel existing roads or trails on public land unless specifically closed by the BLM and that the BLM had no present plans to close the road there involved.   In this case, no evidence was presented that the public generally has the priv-

ilege to traverse the unimproved dirt tracks on the State and BLM land involved.

[¶ 18]   Moreover, even if we were to hold that the unimproved dirt tracks on the State and BLM land constituted public roads, such a determination is not definitive in the analysis that must be made.   As stated previously, the legislature in its enactment of § 24-9-101 intended that the term "outlet" be such that it affords the landowner access via a convenient public road and that convenience and reason prevail in the establishment of roads. While Wagstaffs argue that GCC should be required to use the route over the State and BLM unimproved dirt tracks because GCC could file a petition to require the needed maintenance on County Road 115 and the unimproved dirt tracks across the State and BLM property and spend additional monies to improve the State and BLM unimproved dirt tracks so they would be generally passable on a year round basis, requiring GCC to take such acts simply does not fall within the legislature's expressed intention.

[¶ 19]   A clear similarity exists between the facts presented in this case with those presented in *Walton v. Dana,* 609 P.2d at 463–64.   In *Walton,* this court found it unreasonable, given the legislature's recognized intent under § 24-9-101, to force the Danas to utilize a route to U.S. Highway 89 to which they had no enforceable right to use or to force them to build a road across the grantors' land over swamps and a canal.   This court also recognized that the distance to the Muddy String Road of one and a half miles, as compared to the distance of only onequarter of a mile to U.S. Highway 89 was a valid consideration based on convenience. *Id.*

[¶ 20]   Likewise, we hold that GCC cannot be required to construct a roadway with all the noted difficulties to the "Pape Road" or travel an extended route over State Route 354, County Road 112 and County Road 115 to its other parcel and then traverse several additional miles over unimproved dirt tracks across State and BLM property, a route which may not be legally enforceable, along roads which are not maintained during the winter months and along unimproved dirt tracks which are rarely used by the public.

[¶ 21]   In reviewing appeals from administrative bodies, we cannot substitute our judgment for that of the agency as long as the decision is supported by substantial evidence.   Under the present circumstances, the Board's finding of necessity is supported by substantial evidence.   We also hold that the Board did not err as a matter of law in finding that GCC has no outlet to a convenient public road and that the unimproved dirt tracks did not constitute "public" roads.[2]

### Width of the Private Road

[¶ 22]   Wagstaffs argue that the Board amendment of the viewers' and appraisers' report as to the road width was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and otherwise not in accordance with law.

[¶ 23]   The Board reviewed the report of the viewers and appraisers for a thirty foot wide private road as requested by GCC and authorized in § 24-9-101, which provides that a private road, if established, shall not exceed thirty feet in width from a certain point on the premises of the applicant to some certain point on the public road.   That review process is envisioned by Wyo. Stat. Ann. § 24-9-103 (Lexis 1999) and provides in pertinent part:

> The viewers and appraisers so appointed, or a majority of them, shall make a report to the county commissioners at the next regular session, of the private road so located by them, ... and *if the commissioners are satisfied that such report is just,* and after payment by the applicant of all cost of locating such road, and the damages assessed by the viewers, the commissioners shall order such report to be confirmed and declare such road to be a

2.   Wagstaffs also infer that they were not granted due process by those hearings held before the Board as required by § 24-9-101.   To the contrary, the Board afforded Wagstaffs an opportunity to appear before the Board to contest both the taking and the damage awards determined as is explicitly required under the statute.   *See Martens v. Johnson County Board of Commissioners* 954 P.2d at 380.   Further, the Wagstaffs were notified of the Board's last hearing regarding the involved private road but chose not to attend this hearing.

private road, and the same shall be record-ed as such.

(Emphasis added.)  Additionally, Wyo. Stat. Ann. § 18–3–504 (LexisNexis 2001) provides that each board of county commissioners may make such orders concerning the prop-erty of the county as it deems expedient, lay out, alter or discontinue any road running through the county, and perform such other duties as prescribed by law.

[¶ 24]  Finally, in trying to ascertain the intent of the legislature in its adoption of those applicable statutes regarding the es-tablishment of private roads, we are again convinced that the legislature intended the procedure under these statutes to provide in a local forum a readily available, economical-ly affordable, and time efficient method to obtain a means of access to property, and that convenience and reason should prevail in the establishment of roads.  *Martens v. Johnson County Bd. of Comm'rs*, 954 P.2d at 380, and those cases cited therein.  Accord-ingly, we hold the Board does have an ability, within its discretion, to modify a viewers' and appraisers' report when considering the es-tablishment of a private road.

[¶ 25]  We also stated in *Carney v. Board of County Comm'rs of Sublette County*, 757 P.2d 556, 560–61 (Wyo.1988):

The statutory criterion for selection of a route for a private road is that the viewers and appraisers are to locate route that will "do the least possible damage to the lands through which such private road is locat-ed."  Section 24–9–101, W.S.1977. *In that regard, the route chosen need not be the most convenient and reasonable route pos-sible, taking into account all possible routes, but it only need be a reasonable and convenient route.  McGuire v. McGuire*, Wyo., 608 P.2d 1278 (1980).  The statute does not specify those things the viewers and appraisers are to consider oth-er than the "least possible damage" to the property.  The legislature has directed, however, that these viewers and appraisers should be three disinterested freeholders and electors of the county, and, presum-ably, that requirement contemplates that they will be knowledgeable with respect to the local conditions *and will apply that*

*knowledge and their common sense in ar-riving at a determination.*

(Emphasis added.)  It is also inherently rea-sonable, if not an absolute requirement, that the Board utilize its own knowledge and com-mon sense in complying with its fiduciary duties in its review and ultimate establish-ment of a private road.

[¶ 26]  In determining that the width of the private road should be at a width of thirty feet over its entire length, the Board initially discussed the necessary width should any subdivision take place in the future.  The Board then reviewed in detail the testimony given by the viewers and appraisers as to width and the plat of the private roadway proposed by a state registered professional licensed surveyor admitted into evidence at a hearing before the Board.  The surveyor was also asked to comment on his proposed plat and the width of the private road.  It was expressly recognized that the plat was re-viewed and referred to by the selected view-ers and appraisers.  Finally, the Board dis-cussed issues which regarded the ditch and a bridge involved and the property line as it concerned the width of the private road.

[¶ 27]  Under the applicable abuse of dis-cretion standard, we determine whether the trial court could reasonably conclude as it did and whether any part of its ruling was arbi-trary and capricious.  *Thompson v. Board of County Comm'rs of County of Sublette*, 2001 WY 108, ¶ 7, 34 P.3d 278, ¶ 7 (Wyo.2001) (citing *Vaughn v. State*, 962 P.2d 149, 152 (Wyo.1998)).  Upon review of the record, we are not persuaded that the Board abused its discretion or acted in an arbitrary or capri-cious manner in determining that the width of the private road should be thirty feet in width along its entire length.  The Board reviewed the issues and facts before it, yet disagreed with the proposal made by the viewers and appraisers.  Sufficient evidence existed as the basis for the Board's ultimate width determination.

### *Assessed Damages*

[¶ 28]  Finally, Wagstaffs assert the Board's $10,000.00 damage assessment and analysis of damages generally was arbitrary,

capricious, an abuse of discretion, not supported by substantial evidence, and otherwise not in accordance with law.

[¶ 29]   The Board held a hearing on the report of the viewers and appraisers.   At that time, testimony was elicited from two of the viewers and appraisers and two other witnesses.   In particular, a contractor testified concerning his assessment that the increased cost for the Wagstaffs to maintain an adjacent irrigation ditch amounted to $20,000.00.   Another witness, an appraiser, assessed a $16,682.00 damage estimate related to the devaluation of the Wagstaffs' property and the loss of land under the easement. Additionally, the viewers' and appraisers' testimony clearly established that the $50,000.00 damage estimate contained within their report was not performed using a "before and after" analysis. Thereafter, the Board in its Order Amending and Adopting Viewers Report and Conditional Declaration of Private Road assessed damages in the amount of $10,000.   The Board, however, did not specifically give any basis for its reduction of damages.

[¶ 30]   Wyo.   Stat.  Ann. § 24–9–101 (Lexis 1999) provides, in applicable part:

> Upon the hearing of the application, whether the owner or others interested appear or not, if the board finds that the applicant has complied with the law and that the private road is necessary, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet . . . on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby. . . . The viewers shall . . . assess the damages sustained by the owner over which the road is to be established and make full and true returns, with a plat of the road to the board of county commissioners.

Wyo. Stat. § 24–9–103 (Lexis 1999), further states:

> The viewers and appraisers so appointed, or a majority of them, shall make a report to the county commissioners at the next regular session, of the private road so located by them, and also the amount of damages, if any, assessed by them, and the person or persons entitled to such damages, and if the commissioners are satisfied that such report is just, and after payment by the applicant of all cost of locating such road, and the damages assessed by the viewers, the commissioners shall order such report to be confirmed and declare such road to be a private road, and the same shall be recorded as such.

[¶ 31]   We have had occasion previously to address the issue of establishing damages as it relates to applications for a private road under §§ 24–9–101 *et seq.*   In *Lindt v. Murray,* 895 P.2d 459, 463 (Wyo.1995), we stated:

> The Lindts claim the damage award is improper.   It is evident from the proceedings before the Board that the directions given the Board by the district court in its remand order were not observed or understood.   Therefore, we remand to the district court with directions that the district court remand to the Board and the Board reassemble the viewers and appraisers, or if necessary a different body of viewers and appraisers, and those viewers and appraisers assess damages as follows:   (1) determine the value of the entirety of the Lindts' affected land before the private road was established;   then, (2) determine the value of the Lindts' remaining land after the private road is in place;   (3) subtract the "after" value from the "before" value, which then equals the damages due the Lindts.   *Coronado Oil Co. v. Grieves,* 642 P.2d 423, 433 (Wyo.1982);   and *see generally Mettee v. Kemp,* 236 Kan. 781, 696 P.2d 947, 949 (1985) (discussing Kansas statute which enumerates factors which may be considered in the "before-after" analysis).

*See also Mayland v. Flitner,* 2001 WY 69, ¶¶ 35–39 and *Miller v. Bradley* at 888–89.

[¶ 32]   Since review of the record before us makes it apparent that the appropriate review as to the issue of damages using the required "before-after" analysis was not conducted, we remand this matter back to the district court with directions that the district court remand this matter to the Board and the Board reassemble the viewers and ap-

praisers or, if necessary, a different body of viewers and appraisers, and those viewers and appraisers assess those damages incurred by the Wagstaffs, if any, using the necessary prescribed "before-after" analysis.

## CONCLUSION

[¶ 33] We affirm the Board's establishment of a private road in the width of thirty feet over the entirety of its length as provided in the Board's Order Amending and Adopting Viewers Report and Conditional Declaration of Private Road. However, we reverse that portion of the order assessing damages and remand for the proper assessment of damages as required by established law consistent with this opinion.