2007 WY 35

**PINE BAR RANCH, LLC; and Owen C. Torrey, Margery Torrey, and Ellen Torrey, Appellants (Cross–Petitioners/Respondents),**

v.

**Homer L. LUTHER and Helen P. Luther, Appellees (Petitioners),**

and

**The Board of County Commissioners of the County of Fremont, Douglas L. Thompson, Gary Jennings, Pat Hickerson, Lanny Applegate, and T. Crosby Allen, II, in their official capacities as Commissioners of the Board of County Commissioners of Fremont County, Appellees (Respondents).**

No. 06–108.

Supreme Court of Wyoming.

March 2, 2007.

Representing Appellants: David B. Hooper, of Hooper Law Offices, P.C., Riverton, Wyoming; Tom A. Glassberg, of Hooper Law Offices, P.C., Teton Village, Wyoming. Argument by Mr. Hooper.

Representing Appellees: Joel M. Vincent, of Vincent & Vincent, Riverton, Wyoming; Paul J. Hickey, Roger C. Fransen, and Brandi L. Monger, of Hickey & Evans, LLP, Cheyenne, Wyoming. Argument by Mr. Hickey.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Homer and Helen Luther are the owners of a parcel of real property located in Fremont County. They filed an application with the Board of County Commissioners of Fremont County ("Board") to establish a private road, claiming they did not have legal access from their property to a public road. After a hearing, the Board determined that the Luthers did not meet their burden of establishing necessity and denied their application. The Board found that the Luthers could access their property by way of a public road, the Surrell Creek Road.[1] The Luthers filed a petition for review with the district court contesting the Board's finding that the Surrell Creek Road is a public road. The district court agreed with the Luthers and reversed the Board's decision. Pine Bar Ranch filed this appeal. We find that Surrell Creek Road is not a public road as contemplated by our private road statute and will affirm the decision of the district court.

## ISSUE

[¶ 2] Pine Bar Ranch and the Luthers present several issues for review. We find one issue dispositive:

1. Surrell Creek Road is also known as the Boulder Flats Road, Surrell Creek Truck Trail, and the Sorrel Creek Road. To avoid confusion, we will refer to the road as the Surrell Creek Road.

2. The parties dispute whether the manager was on the North Fork Road at the time he was issued the citation. We need not resolve this dispute because the Board did not make any

Did the Board of County Commissioners of Fremont County err when it determined that the Surrell Creek Road is a public road for purposes of Wyo. Stat. Ann. § 24–9–101 et seq.?

## FACTS

[¶ 3] The Luthers purchased real property in Fremont County known as the LHart Ranch in 1991. This property is located in the North Fork Canyon of the Popo Agie River. At the time the Luthers purchased the property, they were aware that legal access to the Ranch was questionable. According to the Luthers, the LHart Ranch was historically accessed by using the North Fork Road. The North Fork Road passes over land owned by several private parties, tribal trust property, and BLM land. A recorded right-of-way does not exist for the portions of the North Fork Road that crosses tribal trust property and BLM land. However, the Luthers previously utilized this road without interference.

[¶ 4] Around Thanksgiving of 2003, the manager of the LHart Ranch was traveling on the portion of the North Fork Road that traverses tribal trust property and received a citation from a tribal game warden for trespassing.[2] The issuance of the citation caused the Luthers to believe that access to their property was now in jeopardy. As a result, they began efforts to secure easements for access to their property.

[¶ 5] The Luthers' efforts to obtain easements were ultimately unsuccessful. On December 22, 2003, the Luthers filed an application for establishment of a private road.[3] The application alleged that the LHart Ranch was landlocked. The Luthers submitted a proposed route for a private road, which substantially followed the historical access over the North Fork Road. The Luthers proposed a change in the access in an at-

findings in this regard. We simply note this was the event that prompted the Luthers to file a private road application and we do not consider this unresolved issue as support for either parties' contentions.

3. This application was subsequently amended on January 16, 2004, and on August 16, 2004.

tempt to avoid approximately 400 yards of the road which crosses tribal trust property.

[¶ 6] Pine Bar Ranch objected to the Luthers' petition, claiming that the Luthers were not landlocked. Pine Bar Ranch asserted that the Luthers have access to their property via a public road known as the Surrell Creek Road. Pine Bar Ranch further claimed that the Luthers and their neighbors historically used the Surrell Creek Road to access their respective properties.

[¶ 7] In accordance with Wyo. Stat. Ann. § 24–9–101(e), the Board held a hearing on the application.[4] The Board entered its Findings of Fact, Conclusions of Law & Order Denying Second Amended Application on January 3, 2005. The Board ultimately concluded that the Surrell Creek Road is a public road and, therefore, the Luthers failed to meet their burden of establishing necessity. The Luthers filed a petition for review in the district court. The district court reversed the Board's decision finding Surrell Creek Road is not a public road and remanded the case to the Board. Pine Bar Ranch filed this appeal.

### STANDARD OF REVIEW

[¶ 8] The Wyoming Administrative Procedures Act governs our review of a Board's decision on an application for a private road under Wyo. Stat. Ann. § 24–9–101. *Reidy v. Stratton Sheep Co.*, 2006 WY 69, ¶ 7, 135 P.3d 598, 602 (Wyo.2006). Section 16–3–114(c), of the Act, provides in pertinent part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005). We stand in the same position as the district court and review the Board's decision as if it had come directly to this Court from the Board. *Reidy*, ¶ 7, 135 P.3d at 602; *Wagstaff v. Sublette County Bd. of County Comm'rs*, 2002 WY 123, ¶ 7, 53 P.3d 79, 81 (Wyo.2002).

We examine the entire record to determine whether substantial evidence supports the administrative agency's findings of fact. We may not substitute our judgment for that of the agency when substantial evidence supports its decision. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. We do not, however, defer to an agency's conclusions of law. If the correct rule of law has not been correctly applied, the agency's errors are to be corrected.

*Wagstaff*, ¶ 7, 53 P.3d at 81 (internal citations and quotation marks omitted).

### DISCUSSION

[¶ 9] Wyoming's private road statute, Wyo. Stat. Ann. § 24–9–101 *et seq.*, provides the sole remedy for landlocked owners to obtain access to their property. *Reidy*, ¶ 10, 135 P.3d at 603. Wyo. Stat. Ann. § 24–9–101 (LexisNexis 2005), provides in pertinent part:

(a) Any person whose land has no outlet to, nor connection with a public road, may file an application in writing with the board of county commissioners in the county where his land is located for a private road

---

4. The hearing began on June 8, 2004, but due to the length of testimony and the amount of evi-

dence, the hearing was continued to June 30, 2004, and December 23, 2004.

leading from his land to some convenient public road....

...

(h) If at the completion of the hearing the board finds that the applicant has satisfied the requirements of this section and access is necessary because the applicant has no legally enforceable access, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers....

Essentially, this statute provides that the applicant must first show that he has no "legally enforceable means by which he can gain access" to a public road. *Miller v. Bradley*, 4 P.3d 882, 886 (Wyo.2000); Wyo. Stat. Ann. § 24–9–101(a)(ii). Once that showing is made, the applicant has demonstrated necessity as a matter of law. *Miller*, 4 P.3d at 886.

[¶ 10] In this case, the Luthers filed an application with the Board seeking establishment of a private road. The Board denied the application finding that the Luthers

failed to demonstrate necessity. The Board's denial is based upon its conclusion that the Surrell Creek Road is a public road by which the Luthers currently have access to their property.[5] Pine Bar Ranch contends that the Board's findings in this regard are supported by substantial evidence and that the district court's order finding to the contrary should be reversed.

[¶ 11] Although the parties hotly dispute whether the Surrell Creek Road is a public or private road, some basic facts concerning the road are undisputed. The Surrell Creek Road is a two-track dirt trail that was constructed in the 1940's by the Civilian Conservation Corps for purposes of forest and range administration and fire control. Other than a recorded right-of-way for approximately one mile of the Surrell Creek Road leading to the Boulder Flats Subdivision, no other recorded right-of-way exists for the remaining several miles of the Surrell Creek Road to the LHart Ranch.[6]

---

5. The pertinent findings of fact and conclusions of law entered by the Board are as follows:

  9. This Surrell Creek Road is a public road for the following reasons:

    a. Exhibit T-[2]7 reveals that in 194[1], the Civilian Conservation Corps (hereinafter C.C.C.) created a road for "medium traffic" and that testimony received by the Board inferred the use of this road would be limited to forestry and grazing purposes. Because there is no timber in the area and some grazing, our experience tells us such a use would result in the Sorrell Creek Road [sic] receiving "light" use. Therefore, use of the term "medium traffic" infers that the intended use of the road would allow for continuance of public traffic. Furthermore, Exhibit T-[2]7C refers to the C.C.C. funds being re-appropriated for the Sorrell Creek Road [sic] and discusses graveling, bridges and other things to improve the ability to travel.

    b. Exhibit T-29 relates to Exhibit T-27. Specifically, Exhibit T-29 states "Upon investigation of the bridge on the main irrigation canal, on the road to the Pine Bar and Hart Ranch" comes from a 1942 document that clearly illustrates that the Surrell Creek Road is, in fact, an established road as it says, to the Pine Bar and Hart Ranch [Hart Ranch now the Applicants' land].

    c. Exhibit T-19A, an order from the Fremont County Commissioners establishing a private road for applicant J.C. Booth [Applicants' neighboring property] in 1942 states "a line commencing at a point in the truck road

established by the Indian Department" refers to the Surrell Creek Road being a point of public access.

    d. Exhibit T-32, a 1983 Resolution of the Shoshone and Arapahoe Tribes for the Wind River Reservation specifically states that pursuant to 25 C.F.R. 169, a "right-of-way easement for public road purposes for a period without limitation". The Bureau of Indian Affairs as the grantee and the United States as the grantor for a public road across tribal owned lands.

    e. Exhibit T-33 is the actual grant of the easement described in Exhibit T-32 for specifically, a "public road."

    f. Exhibit T-51, a December 17, 2004 letter from Bureau of Indian Affairs, Superintendent for the Wind River Agency George E. Gover states that "[t]he search of the records provides that the earliest access to lands in the North Fork Canyon was along this route" referring to the Sorrell Creek Road [sic] and that testimony provided that said road has been in existence for at least 80–90 years.

  10. Therefore, the [Luthers] have a legally enforceable access to their land.

6. At first blush, the Board's finding, 9(d), appears to contradict this statement. That finding states:

    d. Exhibit T-32, a 1983 Resolution of the Shoshone and Arapahoe Tribes for the Wind River Reservation specifically states that pursuant to 25 C.F.R. 169, a "right-of-way easement for public road purposes for a peri-

[¶ 12] Our private road statute does not supply a definition for the term "public road." *McGuire v. McGuire*, 608 P.2d 1278, 1287 (Wyo.1980). Other Wyoming statutes providing a definition of a public road are of little assistance in this case because the Surrell Creek Road is located within the boundaries of the Wind River Indian Reservation and is subject to the jurisdiction of the Bureau of Indian Affairs (under the Secretary of the Interior) ("BIA") and the Joint Business Council of the Arapahoe and Shoshone Tribes.[7] *See McGuire*, 608 P.2d at 1287 (explaining that state statutes containing definitions that pertain to state and county roads "are not applicable to roads such as the BLM road" because it is under the jurisdiction of the United States). Despite the multi-jurisdictional issue presented by the location of the Surrell Creek Road, we can, nonetheless, determine the nature of the road for purposes of our private road statutes. *See McGuire*, 608 P.2d at 1287; *Reidy*, ¶¶ 18–19, 135 P.3d at 606.

[¶ 13] We recently addressed a similar situation in which a landowner's property potentially could be accessed by a federal road. In *Reidy*, we were asked to determine whether a federal Forest Service road could be considered a public road under Wyo. Stat. Ann. § 24–9–101. We held that, "as a matter of law, a road over federal lands may be considered a public road within the meaning of our private road statutes, provided the characteristics of the road indicate it is available to the general public." *Reidy*, ¶ 19, 135 P.3d at 606. Upon reviewing the record in *Reidy*, we found "voluminous testimony and documentary evidence" showing that the Forest Service road had been open to the general public. *Id.*, ¶¶ 15–16, 135 P.3d at 605. We also found that the Forest Service considered the road a "pretty major road" and that they regularly maintained it. *Id.*, ¶ 15, 135 P.3d at 605. A Forest Service employee testified that the road was open to the general public, had been publicly used for more than forty years, and was in current use by "tourists, hunters, ranchers, farmers, and even motorcyclists." *Id.*, ¶ 16, 135 P.3d at 605. The employee also testified that the Forest Service did not plan to close the road and that it was highly unlikely it would change the public access. *Id.* After consideration of these characteristics of the road, we concluded that the Forest Service road was a public road for purposes of our private road statute. *Id.*, ¶¶ 20–21, 135 P.3d at 606–607.

[¶ 14] The characteristics of the Surrell Creek Road are in stark contrast to the characteristics of the Forest Service road at issue in *Reidy*. The Surrell Creek Road is not recognized as a public road by either the Shoshone or Arapahoe Tribes, or by the BIA. In a letter to the Fremont County Commissioners, the Superintendent of the Wind Riv-

---

od without limitation". The Bureau of Indian Affairs as the grantee and the United States as the grantor for a public road across tribal owned lands.
However, upon review of the record and the briefs submitted by both parties, it is clear this right-of-way refers to a one-mile portion of the road leading to the Boulder Flats Subdivision and does not extend to the remainder of the road leading to the Luthers' property.

7. Wyo. Stat. Ann. § 24–1–133(b) (LexisNexis 2005) provides: "For purposes of this section 'public road' means any passageway ... to which a governing body has acquired unrestricted legal right for the public to use the passageway." Wyo. Stat. Ann. § 24–1–101 (LexisNexis 2005), Public highways defined and established; creation by adverse possession, is more specific and provides in pertinent part:
  (a) On and after January 1, 1924, all roads within this state shall be highways, which have been or may be declared by law to be state or county highways. It shall be the duty of the several boards of county commissioners, within their respective counties, prior to said date, to determine what, if any, such roads now or heretofore travelled but not heretofore officially established and recorded, are necessary or important for the public use as permanent roads, and to cause such roads to be recorded, or if need be laid out, established and recorded, and all roads recorded as aforesaid, shall be highways. **No other roads shall be highways unless and until lawfully established as such by official authority.** Except, nothing contained herein shall be construed as preventing the creation or establishment of a public highway right-of-way with reference to state and county highways under the common-law doctrines of adverse possession or prescription either prior to or subsequent to the enactment hereof....
(Emphasis added.)

er Agency reiterated that the Surrell Creek Road is a private road.[8] He explained:

> The authority to approve all transaction[s] that affect[ ] lands held in trust by the U.S. Government for American Indian Tribes and individual Indians resides with the Secretary of Interior. Specifically, the authority to grant Rights-of-way pursuant to 25 U.S.C. 323–328 and 25 CFR Part 169 has been delegated to the Superintendent, Wind River Agency. Accordingly, Homer and Helen Luther knew or should have known that at the time they purchased the said property that there was no Bureau of Indian Affairs recorded right of way or egress to the property across American Indian Trust Lands.

The position taken by the Superintendent of the Wind River Agency is further supported by the testimony of John Schumacher. Mr. Schumacher is an attorney who was hired by the Luthers to review documents relating to rights-of-way across trust lands. He testified concerning the status of the Surrell Creek Road as follows:

> [Luthers' Attorney]: Now, are you aware, Mr. Schumacher, of a position that's taken by some, that if public money is spent on a road over either tribal trust or allotted trust lands, that such expenditure renders the road a public road?
>
> [Mr. Schumacher]: Yes, I am.
>
> [Luthers' Attorney]: And what is your knowledge of that proposition?
>
> [Mr. Schumacher]: The Federal Regulation 25 CFR, Part 170 and their predecessors provide for two situations where you can have a public road over Indian land. And also Part 169. Part 169 allows for public roads when they're specifically designated as such. . . .
>
> Under Part 70—Part 170.8 provides the free public use for roads—that it's required on roads that are eligible for construction and maintenance with federal funds under that part.

> Now, to be eligible under that part, several conditions have to be met before it's required that access is available to the public. First of all, the financial aid that was used to build that road must have been specifically appropriated from federal funds for public road purposes. The road also has to be designated as such, a public road, by the Bureau of Indian Affairs and the Federal Highway Administration. And that also includes acquisition of rights-of-way.
>
> . . .
>
> [Luthers' Attorney]: With regard to 25 CFR, 170, did you examine any of the documents concerning what's been called the Sorrel Creek Truck Trail?
>
> [Mr. Schumacher]: Yes, I have.
>
> [Luthers' Attorney]: And do you have an opinion whether those documents would meet the four requirements that you earlier mentioned in your testimony?
>
> [Mr. Schumacher]: No. The documents indicate that funding was available under the Civilian Conservation Corps program for construction of a truck trail, which has been called the Sorrel Creek Truck Trail. The documents submitted indicate that that road or truck trail was constructed for the purpose of forest and range administration and fire control, to indicate that it was not dedicated to the public. . . .
>
> There is no official grant of right-of-way by the Secretary of Interior. . . .
>
> [Luthers' Attorney]: So if I understand your testimony, then, you're saying that the Sorrel Creek Truck Trail, in your opinion, would not come within the purview of 25 CFR, 170. Is that correct?
>
> [Mr. Schumacher]: That is correct. There has been no acquisition of rights-of-way. It was not funded with specific funds for highway purposes. It has not been designated as a part of the public road system by the Bureau of Indian Affairs. And I found no record of it being designated as

---

8. We note, as further indication that the Surrell Creek Road is considered a private road, that there are several signs posted along the road which state that the Wind River Indian Reservation is closed to trespassing without a permit. The parties dispute whether these signs indicate that travel on the road itself is trespassing or whether venturing off the road is trespassing. The Board did not make any findings on this issue and we need not resolve it for purposes of this appeal.

such by the Federal Highway Administration.

[¶ 15] Unlike the "voluminous testimony and documentary evidence" presented in *Reidy* indicating the road was open to the general public, the evidence presented in this case indicates that the use of the Surrell Creek Road was limited to employees, former employees, and family members of the LHart Ranch. "A public road is one that the public generally—not merely a portion of the public—is privileged to use." *McGuire*, 608 P.2d at 1288. *See also Wagstaff*, ¶ 17, 53 P.3d at 83–84 (holding the unimproved dirt tracks did not constitute public roads because no evidence was presented that the public generally has the privilege to traverse them). Pine Bar Ranch failed to present any evidence of public use. As a result, the Board's finding that the Surrell Creek Road is a public road is not supported by substantial evidence.

[¶ 16] Pine Bar Ranch contends that even if the Surrell Creek Road is not a public road, the Luthers could apply for a limited right-of-way to cross the tribal lands. Pine Bar Ranch points to the letter received from the Superintendent of the Wind River Agency which states that the BIA is willing "to grant a limited Right of Way to Homer and Helen Luther along the existing commonly known Boulder Flats Road for their heirs, employees and guest[s] for traditional ranch purposes." The Superintendent explained what he meant by a limited right-of-way during his testimony as follows:

> Limited right-of-way entails egress. There is no taking. That is the concern of the tribes. It means that there is no property [that] goes with that right-of-way. It's not like we have the rights-of-way within the county where we turn the right-of-way over to the county and then they control that right-of-way with the state, et cetera, and the county. This one—and those are on public access. This is a private road. It means that person has egress back and forth and that it cannot be sold with the property as such. However, if a new tenant would come in, or owner,

then they could apply for right-of-way and egress. The tribes are willing to extend that to Mr. Luther and his heirs, also to his employees and also to his guests and such for traditional farming purposes.

[¶ 17] The Superintendent's offer is insufficient to establish access to a public road. The access contemplated by our private road statute must be an "incorporeal right appurtenant to the estate granted, not a personal right or one incident to personal property." *Reaves v. Riley*, 782 P.2d 1136, 1137 (Wyo. 1989). Furthermore, even if the Luthers could have pursued a limited right-of-way from the tribes, they are not required to do so before seeking to establish a private road. *See Miller*, 4 P.3d at 887 (finding that § 24–9–101 contains no requirement that other forms of relief be pursued prior to seeking the relief available under its provisions). *See also McGuire*, 608 P.2d at 1286; *Walton v. Dana*, 609 P.2d 461, 463 (Wyo.1980); *Lindt v. Murray*, 895 P.2d 459, 462 (Wyo.1995).

[¶ 18] Pine Bar Ranch also contends that even if the Luthers met their burden of proof that they are landlocked, their petition must be dismissed because the Luthers' proposed road did not contain an uninterrupted physical connection between the Luthers' land and a public road. We agree with the Luthers' that this argument is premature. Upon remand, the Board shall appoint viewers and appraisers to locate and mark out a convenient private road. Any issues related to the location of the private road should be resolved in accordance with that process.

### CONCLUSION

[¶ 19] The Board's finding that the Surrell Creek Road is a public road is not supported by substantial evidence. The order of the district court is affirmed.