2008 WY 31

**Susan Littlefield HAINES,
Appellant (Plaintiff),**

v.

**OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,
Appellee (Defendant).**

**No. 06–147.**

Supreme Court of Wyoming.

March 20, 2008.

Representing Appellant: Gibson Sean Benham, Casper, Wyoming.

Representing Appellee: Keith R. Nachbar of Keith R. Nachbar, P.C., Casper, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1]   In this appeal, appellant Susan Littlefield Haines (Haines), the insured, asks this Court to decide for the first time whether a title insurance policy that insures legal access requires the insurer to affirmatively obtain a recorded easement or right of access or compensate the insured for the lack of recorded access rights.   The trial court granted summary judgment to appellee Old Republic National Title Insurance (Old Republic), the insurer, holding that Haines was not entitled to either remedy because she had access to her property and had suffered no loss entitling her to compensation under the policy.

[¶ 2]   Haines contends that, as a matter of law, an insurer's failure to remedy a title defect or compensate for the insured's having

to establish the right of access under these circumstances breaches the title insurance policy. We find that in this instance the insurer has adequately established that the alleged unmarketability or other title problems do not really exist and, thus, Haines cannot suffer any loss or damages, and we affirm the grant of summary judgment.

## ISSUES

[¶ 3] Haines presents the following questions for our review:

1. Whether upon being notified that no recorded easement or right of access exists to a real property a title insurance company who issued a title policy on such property insuring a legal right of access is required to obtain a recorded right of access or otherwise compensate the property owner for the lack thereof.

2. Whether a title insurance company breaches the terms of the title policy and/or commits the tort of bad faith by failing and refusing to obtain a recorded right of access following such notification where no adjoining property owner is actively blocking the insured's access to the subject property.

Old Republic restates the issues to be:

1. Did the District Court below properly grant summary judgment to Defendant Old Republic?

2. Was Old Republic obligated to affirmatively act to cure Haines' perceived access concerns under the terms of an indemnification title policy when Haines' access had never been blocked or restricted, Haines had other access to her property, and Haines had not suffered any loss or damages?

3. Did Haines comply with the claim procedure in the policy?

## FACTS

[¶ 4] Our standard of review for summary judgments requires that we review the recitation of facts from the vantage point most favorable to Haines, as the party opposing the motions, awarding her all favorable inferences that may be drawn from the facts. *Hulse v. First American Title*, 2001 WY 95, ¶ 5, 33 P.3d 122, 127 (Wyo.2001) (citing *S & G Investors, LLC v. Blackley*, 994 P.2d 941, 943 (Wyo.2000)).

[¶ 5] Before Haines purchased property in Natrona County, Wyoming, in May of 1999, the seller's real estate agent requested that Rocky Mountain Title Insurance Agency, Inc., (agency) issue a title insurance commitment. The agency investigated methods of access to the home on Gothberg Road, finding that access to Haines' home had been obtained by that road for almost 100 years. The agency also determined that Haines would have access by two other methods which she since has used more frequently than by Gothberg Road. The agency, however, recognized that there was no record of easement for Gothberg Road.

[¶ 6] Adjacent landowners, Steven G. and Suzanne D. Boomer, had purchased their property in February of 1999 and believed that Gothberg Road which traversed their property was their private road. The Boomers had installed cattle guards, made other improvements to the road, and maintained it. When Haines' invitees began using the road to move heavy equipment for improvements to her property, the Boomers contacted law enforcement and threatened trespass charges, delaying the improvements. Haines determined that the Boomers' predecessor in interest had granted an easement/right of way to the public to use Gothberg Road. On this basis, Haines sued the Boomers on June 23, 2000, seeking injunctive relief and a declaration that the road was dedicated to public use. The Boomers filed an answer denying public dedication and counterclaimed that the road was their private property they had privately maintained and requested that the road be declared their private property. After receiving the counterclaim, Haines contacted Old Republic and notified it that her right of access was in litigation. In response, Old Republic replied:

Please advise if Gothberg Road is a public road or a private right of way. Does Natrona County take the position that Gothberg Road is a public road? Does Natrona County maintain the road or is it maintained by private land owners? Is there other legal access to your land? In

other words, is there any way to legally access your land other than by way of Gothberg Road? Your policy insures that you have legal access. However, the policy does not insure that you have any particular legal access. Therefore, if you have legal access by way of some other public road or private easement, there is no duty to defend or indemnify you.

The letter concluded by requesting more information from Haines' attorney in order to make a final determination.

[¶ 7] Haines' lawsuit, however, proceeded without Old Republic participating and concluded in Haines' favor. That litigation produced a court order declaring the road had been dedicated to public use by deed and prohibiting the Boomers' interference with Haines' or her invitees' use of Gothberg Road. Haines, however, was convinced that the absence of recorded legal access amounted to simple access that could again be challenged making her title unmarketable. Her title policy stated that she was insured against loss or damage caused by a lack of a right of access to and from the land and unmarketability of the title. The policy does not define "right of access" but does define the term "unmarketability of title," stating it to be an "alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title."

[¶ 8] Haines sued Old Republic seeking affirmative action to provide her with legal access and compensate her for her legal fees for its failure to defend her against the Boomers' private road claims. Old Republic denied that Haines had properly followed the policy's notice requirements, provided proof of loss or damages, and did not have legal access by any of three methods she was presently using. On all of these bases, the trial court granted Old Republic summary judgment. This appeal followed.

## STANDARD OF REVIEW

[¶ 9] Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. A material fact is any fact that, if proved, would have the effect of establishing or refuting an essential element of a claim or defense asserted by a party. We review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. Summary judgment serves the purpose of eliminating formal trials where only questions of law are involved. We review a grant of summary judgment by deciding a question of law de novo and afford no deference to the district court's ruling on that question. *Hulse*, ¶ 25, 33 P.3d at 131.

## DISCUSSION

[¶ 10] "A title insurance policy protects the insured against loss or damage as a result of defects in or the unmarketability of the insured's title to real property." *Stewart Title Guar. Co. v. West*, 110 Md.App. 114, 676 A.2d 953, 960 (1996). "[T]he duty owed to an insured that arises through the issuance of a title insurance policy is contractual and subject to the policy's stated terms and conditions." *Hulse*, ¶ 45, 33 P.3d at 136. Haines' policy states that it is an indemnity contract. Haines contends that, although Wyoming has not addressed the specific issue she presents in this appeal, *Hulse* recognized that a lack of legal access that causes a title defect and unmarketable title presents the issue whether the title insurance policy's terms have been breached. She also contends that a case in another jurisdiction directly addressed this issue under similar facts and found the insurer to have breached similar policy terms. *Stewart Title*, 676 A.2d at 965. We have carefully reviewed *Hulse* and *Stewart Title* and agree with Haines that her policy should be governed under the generally accepted rules of interpreting title

insurance policy terms and conditions set forth in *Stewart Title,* which we summarize:

> The predominant view today is that title insurance—at least as to its first party aspect—is a contract of indemnity, and not a contract of guaranty or warranty. Consequently, a title insurer does not "guarantee" the status of the grantor's title.
>
> As an *indemnity* agreement, the insurer agrees to reimburse the insured for loss or damage sustained as a result of title problems, as long as coverage for the damages incurred is not excluded from the policy. . . .
>
> When an insured notifies an insurer of a title problem, the insurer ordinarily has three choices. It may either (1) pay the insured for the loss up to the amount of the coverage limits of the policy; (2) clear the title defect within a reasonable time; or (3) show that the alleged unmarketability or other title problems do not really exist and thus there is no way in which the insured could sustain any loss.

*Stewart Title,* 676 A.2d at 960–61 (citations omitted). This Court has frequently examined issues arising under title insurance policy terms in a manner consistent with the above. *See Hulse; Bredthauer v. Christian, Spring, Seilbach and Assoc.,* 824 P.2d 560 (Wyo.1992); *Ruby Drilling Co., Inc. v. Title Guar. Co. of Wyoming, Inc.,* 750 P.2d 674 (Wyo.1988).

[¶ 11] As Haines states, this Court has not previously addressed similar facts. In *Stewart Title,* the insured had title insurance terms protecting their right to legal access to a public road. Because of failures by their title insurance company and its agents, the insured, among other problems, was found to be landlocked, because although ingress and egress were possible, there was no legal right of access. *Stewart Title,* 676 A.2d at 965. The court found that there are few title problems that are more palpable than complete lack of access to a public road, and it held that when property completely lacks such access, it is usually held that its title is unmarketable, apparently on the ground that the purchaser would be subjected to the risk of a lawsuit to establish an easement by necessity in order to gain a right of access. *Id.* at 965.

[¶ 12] Haines contends that, based on this reasoning, the failure to provide a recorded easement or right of access is a breach of her policy. Consequently, she reasons, her insurer should either remedy the title defect by obtaining record legal access or pay her damages up to the face value of the policy. However, based upon *Stewart Title,* and this Court's previous decisions about the nature of roads that provide for legal access in Wyoming, as we explain below, we do not find that Haines is landlocked.

[¶ 13] We have previously recognized that the statutory definition of a highway includes a road that is dedicated for public use in such a manner that any part is open for use by the public for purposes of vehicular travel. *McClean v. State,* 2003 WY 17, ¶ 11, 62 P.3d 595, 598 (Wyo.2003). We have said:

> A dedication is generally defined as the devotion of property to a public use by an unequivocal act of the owner, manifesting an intention that it shall be accepted and used presently or in the future. When lots are being subdivided or streets are being defined, land may be dedicated for public use either through the statutory procedures for dedication *or under common law.*

*Id.,* ¶ 11 n. 3, 62 P.3d at 599 n. 3 (quoting *River Properties Partnership v. Willoughby,* 944 P.2d 1145, 1148 (Wyo.1997)) (emphasis in original). In addition, this Court has recognized:

> *A common law dedication requires an intention to dedicate expressed in some form, and an acceptance of the dedication by the proper public authorities, or by general public user.* It is distinguishable from a statutory dedication, which is in the nature of a grant, and from prescription which is based on a long period of use. *Generally a common law dedication rests upon the doctrine of estoppel.* Statutory dedication generally vests the legal title to the grounds set apart for public purposes in the municipal corporation, while *the common-law method leaves the legal title in the original owner.*

*McClean,* ¶ 11 n. 3, 62 P.3d at 599 n. 3 (quoting *Town of Moorcroft v. Lang,* 779 P.2d 1180, 1183 (Wyo.1989)) (emphasis in original).

 [¶ 14] In Wyoming, a public road is one the public generally—not merely a portion of the public—is privileged to use, provided the characteristics of the road indicate it is available to the general public. *See Pine Bar Ranch, LLC, et. al v. Luther,* 2007 WY 35, ¶¶ 12, 13, 152 P.3d 1062, 1067 (Wyo.2007) (citing *McGuire v. McGuire,* 608 P.2d 1278, 1288 (Wyo.1980)); *Wagstaff v. Sublette County Bd. of County Comm'rs,* 2002 WY 123, ¶ 17, 53 P.3d 79, 83–84 (Wyo.2002) (holding the unimproved dirt tracks did not constitute public roads because no evidence was presented that the public generally has the privilege to traverse them). We have decided that where a public road is open to the public and used by it, there is legally enforceable access and, thus, no question about transferability of the right to use the road. *Reidy v. Stratton Sheep Company,* 2006 WY 69, ¶ 24, 135 P.3d 598, 607 (Wyo.2006).

[¶ 15] Viewed in the light most favorable to Haines, no evidence exists that Gothberg Road, which has been used to access her property for over 100 years, is not a public road with appropriate characteristics making it generally available to the public. Accordingly, Haines has legally enforceable access to the road that is transferable, meaning that her title is marketable. This was the status of her title at the time she brought suit against the Boomers, and Old Republic was within its rights under the policy to decide that her title had no defect and she had suffered no loss. Old Republic did not breach the policy by failing to defend her against the Boomers' counterclaim of which she properly and timely notified it without prejudice to Old Republic. Old Republic is not now in breach by failing to record access rights or compensate her for her losses sustained by the Boomers' counterclaim. Haines was within her rights to sue her neighbor to settle her dispute with them without participation by her insurer; however, her insurer's failure to provide her with a defense, while risky for it, does not entitle her to compensation for her legal fees under the specific terms of her policy, which state that it is not liable for those attorney fees.

 [¶ 16] We also find that the tort of bad faith is not applicable here for the reasons just stated, there had been no breach, but also for the reasons stated in *Hulse.* Haines had two other methods of access and has presented no evidence that these were not legally enforceable. In such a case, the insurer may decline to defend or remedy the perceived title defect because there is no loss or damages. Only defects shown in the public record relating to a legal right of access are covered under the policy. *Hulse* ¶ 50, 33 P.3d at 138. In summary, having determined there is no genuine issue as to any material fact on Haines' claims against Old Republic, we affirm the district court's grant of summary judgment in its favor.