2007 WY 158

In the Matter of the Application for Establishment of Charles Leroy CRAGO and Olive K. Crago, Co–Trustees of the Crago Ranch Trust u/t/a Dated September 14, 1992, for a Private Road:

Elk Horn Ranch, Inc., Appellant
(Petitioner),

v.

The Board of County Commissioners of Crook County, Wyoming, Appellee (Respondent).

No. S–07–0007.

Supreme Court of Wyoming.

Oct. 8, 2007.

Representing Appellant: Max Main and Wade Nyberg of Bennett, Main & Gubbrud, PC, Belle Fourche, SD.

Representing Appellee: Joseph M. Baron, Crook County and Prosecuting Attorney, Sundance, WY.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] The Appellant in this case is the Elk Horn Ranch, Inc. The owners of the Elk Horn Ranch are Werner and Dorothy Fortak. We will refer to the Appellant as the Fortaks in this opinion. Charles and Olive Crago, and their son Jerry Crago, operate an adjoining ranch, although its owner is the Crago Ranch Trust. We will refer to that entity as the Cragos. The Cragos asserted that they had no enforceable means of access to their ranch because, in 2003, the Fortaks began denying the Cragos the use of a road that they had used for at least the preceding 50 years. The Fortaks acquired the Elk Horn Ranch in 1987. For this reason the Cragos sought a private road under Wyo. Stat. Ann. § 24–9–101 (LexisNexis 2007). The need for a private road is not in dispute in this case. The issues relate to the selection of which of two existing routes across the Fortaks' ranch was the most appropriate under the terms of the governing statute, and by what method the damages caused to the Fortaks, by the loss of their exclusive use of the route that was ultimately designated, is to be measured.

[¶ 2] The Appellee in this case is the Crook County Board of County Commissioners (the Board).

[¶ 3] We will affirm in part, reverse in part, and remand this matter to the district court with directions that the district court further remand it to the Board for additional proceedings consistent with this opinion.

## ISSUES

[¶ 4] The Fortaks raise these issues:

1. The findings of fact and conclusion of law made by the Board are not supported by substantial evidence.

2. The Board erred in selecting the route preferred by the Cragos as the route that does the least possible damage.

3. The Board erred in selecting the route preferred by the Cragos as the route that is the most reasonable and convenient.

The Board essentially conformed its statement of the issues to that of the Fortaks, but adds that the Board did not act arbitrarily, capriciously, or abuse its discretion in resolving this matter.

## DISCUSSION

### The Statute

[¶ 5] Wyo. Stat. Ann. § 24–9–101 (LexisNexis 2007) provides the sole, and complete, remedy for landlocked owners to obtain access to their property. *Pine Bar*

*Ranch, LLC v. Luther,* 2007 WY 35, ¶ 9, 152 P.3d 1062, 1065 (Wyo.2007); *Snell v. Ruppert,* 541 P.2d 1042, 1046 (Wyo.1975).[1] The statute that governs in the matter of private roads was dramatically changed in 2000, and, as a consequence, many of our cases that predate those amendments are not reliable sources of authority with respect to cases initiated after March 14, 2000. 2000 Wyo. Sess. Laws ch. 88, §§ 1–3. We set out the entirety of the current statute here:[2]

**§ 24–9–101. Petition; initial hearing; appointment of viewers and appraisers; bond; rules.**

(a) Any person whose land has no outlet to, nor connection with a public road, may file an application in writing with the board of county commissioners in the county where his land is located for a private road leading from his land to some convenient public road. The application shall contain the following information:

(i) The legal description of the land owned by the applicant to which access is sought and a statement that the land is located within the county;

(ii) A specific statement as to why the land has no legally enforceable access, other than a waterway, and whether the land is surrounded on all sides by land owned by another person or persons or a natural or man-made barrier making access unreasonably costly;

(iii) A description of the applicant's efforts to purchase a legally enforceable access to a public road;

(iv) A description sufficient to identify the general location of any access routes proposed by the applicant;

(v) The legal description and the names and addresses of the affected parties of all land over which any proposed access routes would cross. Affected parties includes the owners of record, owners of recorded easements and rights of way and any lessee, mortgagee or occupant of the land over which any proposed road would cross and may include the state of Wyoming; and

(vi) A statement as to whether any actions of the applicant or any person with the consent and knowledge of the applicant, caused the applicant's land to lose or to not have any legally enforceable access.

(b) Within ten (10) days after filing an application with the board, the applicant shall give notice in writing by certified mail, with return receipt, to the affected parties of all lands over which any private road is applied for, of his pending application for a private road. The notice shall include a complete copy of the original application and any amendments thereto.

(c) The board shall review the application within thirty (30) days of its receipt and if the board finds the application contains the information required by subsection (a) of this section and notice has been provided in accordance with subsection (b) of this section, it shall schedule a hearing to determine whether the applicant has no legally enforceable access to his land. The hearing shall be scheduled at a date that allows the applicant time to give all notice required under this section.

(d) If the applicant has had access to his land and that access is being denied or restricted, the board of county commissioners may grant temporary access to the applicant over a route identified by the board until the application has been processed and finalized.

---

1. The original statute governing private roads was enacted in 1895, and the 2000 amendments were a significant step in modernizing the procedures to be used in laying out private roads. A more enduring problem appears to be that the actual practice in many counties has not changed in light of the amendments. We also take note that these statutory provisions emanate from the Wyoming Constitution. Wyo. Const. art 1, § 32 provides: "Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation." Wyo. Const. art 1, § 33 provides: "Private property shall not be taken or damaged for public or private use without just compensation."

2. Editor's notes: There is no subsection (i) in this section as it appears in the printed acts.

(e) After the board has scheduled a hearing date under subsection (c) of this section, the applicant shall give written notice of the date, time and place of the hearing on the application, by certified mail with return receipt, to all affected parties named in the original application and any other landowners the board believes may be affected by the application or any alternative route which may be considered by the board or the viewers and appraisers. The written notice shall include a copy of the original application and any amendments thereto and shall be provided at least sixty (60) days prior to the pending hearing. If any affected party is a nonresident, and there is no resident agent upon which personal service can be had, then the notice may be published once a week for three (3) weeks in a newspaper published in the county. The first publication shall be at least sixty (60) days prior to the hearing.

(f) The board may assess to the applicant costs for acting on the application under this section and W.S. 24–9–103 and require the applicant to file a bond to pay for those costs.

(g) All affected parties having an interest in the lands through which the proposed road or any alternative road may pass may appear at the hearing and be heard by the board as to the necessity of the road and all matters pertaining thereto.

(h) If at the completion of the hearing the board finds that the applicant has satisfied the requirements of this section and access is necessary because the applicant has no legally enforceable access, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers. Before entering upon their duties the viewers shall take and subscribe to an oath that they will faithfully and impartially perform their duties under their appointment as viewers and appraisers. The board shall cause an order to be issued directing them to meet on a day named in the order on the proposed road, and view and appraise any damages and make a recommendation to the board. Prior to meeting on-site to view the proposed road, the viewers shall give notice in writing to the applicant and affected parties of the lands through which the proposed road or any alternative road may pass, of the time and place where the viewers will meet, at least ten (10) days before viewing the road, at which time and place all persons interested may appear and be heard by the viewers. The viewers and appraisers shall then proceed to locate and mark out a private road and alternative routes as they deem appropriate, provided the location of the road shall not be marked out to cross the lands of any affected party who was not given notice under subsection (e) of this section. **The viewers and appraisers shall recommend the most reasonable and convenient route,** provided that access shall be along section and boundary lines whenever practical. The viewers and appraisers may recommend specific conditions that the board place on the road as the board deems necessary, including provisions for maintenance and limitations on the amount and type of use. **The proposed road shall not exceed thirty (30) feet in width from a certain point on the land of the applicant to some certain point on the public road, and shall be located so as to do the least possible damage to the lands through which the private road is located. The viewers and appraisers shall also appraise any damages sustained by the owner over which the road is to be established** and make full and true returns, with a plat of the road to the board of county commissioners. The viewers and appraisers shall also determine whether or not any gates or cattleguards shall be placed at proper points on the road, and appraise any damages in accordance with that determination.

(j) **In determining any damages to be suffered by the owner or owners of the lands through which the access shall be provided, the viewers and appraisers shall appraise the value of the property before and after the road is in place.** Damages also may include reasonable compensation for any improvements on the lands over which any private road is to be

granted which were not paid for and will be used by the applicant.

(k) All hearings under this section and W.S. 24–9–103 shall be held in accordance with the Wyoming Administrative Procedure Act, as it applies to a contested case. The board shall enforce the provisions of this article in accordance with the Wyoming Administrative Procedure Act. [Emphases added.]

[¶ 6] We have concluded that once a landowner has proved that he has no "legally enforceable means by which he can gain access" to a public road, then he has demonstrated the "necessity" for a private road. *Pine Bar Ranch*, at ¶ 9, 152 P.3d at 1066. In this case, the necessity for the private road is not disputed.

[¶ 7] Wyo. Stat. Ann. § 24–9–103 (LexisNexis 20007) also pertains, so we set it out verbatim too:

§ 24–9–103. **Report of viewers and appraisers; second hearing; order by commissioners; appeal.**

(a) The viewers and appraisers so appointed, or a majority of them, shall make a report of their recommendations to the board of county commissioners at the next regular session, and also the amount of damages, if any, appraised by them, and the person or persons entitled to such damages. Upon receiving the report of the viewers and appraisers, the board shall hold a hearing after twenty (20) days prior written notice to all affected parties having an interest in the lands through which the proposed road or any alternative road may pass, at which time the affected parties may address the report. The board may either accept, reject or modify the report and recommendations. **The board shall select the most reasonable and convenient route for the access,** provided that access shall be along section and boundary lines whenever practical. In compliance with the Wyoming Administrative Procedure Act, the board shall issue an order specifying the route selected by the board, any conditions imposed by the board and any damages and costs to be paid by the applicant.

(b) **The applicant and any other person aggrieved by the action of the board including the amount of any damages awarded, may appeal to the district court at any time within thirty (30) days from the date of the order.**

(c) After the board of county commissioners has received proof of payment by the applicant of any damages and costs ordered to be paid, the board shall cause a certified copy of the order to be filed with the register of deeds declaring the road to be a private road, and citing in the order any conditions imposed by the board.

(d) In addition to paying any damages to be suffered by the affected parties having an interest in the land through which the access shall be provided, the applicant shall be responsible for obtaining and for paying for any engineering and construction costs incurred concerning the location and construction of the road.

(e) If the proposed private road is located in two (2) or more counties, or if all parties and the board of county commissioners so stipulate, the applicant may bring a private road action in district court in the county where any of the affected lands are located. [Emphases added.]

## The Parties to This Judicial Review

[¶ 8] The Fortaks sought review of the Board's action in the district court pursuant to W.R.A.P. 12, and Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2007). Only the Board took part in the proceedings in the district court as a party opponent to the Fortaks. In *Miller v. Bradley*, 4 P.3d 882, 889 (Wyo.2000) we said:

Bradley claims that the Board of County Commissioners is precluded from appealing the district court order to this court by its failure to file an appeal with the district court. The Board of County Commissioners is not a "person" as defined by the relevant statutes. See *Brandt v. TCI Cablevision of Wyoming*, 873 P.2d 595 (Wyo. 1994); *Basin Electric Power Co-op., Inc. v. Dep't of Rev.*, 970 P.2d 841 (Wyo.1998); W.R.A.P. 12.01. Therefore, that board could not appeal to the district court and cannot be scored for its failure to do so.

Additionally, as a practical matter, the Board of County Commissioners has no reason to appeal to the district court from its own decision—we assume it is not "aggrieved or adversely affected" by it own decision. See W.R.A.P. 12.01. However, an "aggrieved party may obtain review of any final judgment of the district court by appeal to the supreme court." W.R.A.P. 12.11; *Safety Medical Servs., Inc. v. Employment Security Comm'n*, 724 P.2d 468, 471 (Wyo.1986); W.R.A.P. 12.11. Because the Board of County Commissioners was a proper party (FN1) below, it is not precluded from appealing the district court order to this court.

(FN1.) The Board of County Commissioners is a proper party in the action before the district court because it acts as a "regulatory" body, not as an "adjudicative" body, under the private road statute. See *Antelope Valley Improvement Dist. v. Board of Equalization* [Clarification], 4 P.3d 876 (Wyo.2000).

[¶ 9] We question the soundness of our holding in *Miller*, and we will backtrack a bit from it. Under the circumstances of the instant case, we hold that the Board acted principally as an adjudicatory body and probably should not have filled the role it has thus far played in these proceedings in the district court and in this Court. The County and the Board may have an interest in the sensible laying out of roads throughout the County and that may appropriately be deemed as an exercise of its regulatory powers. However, the Board did not act in the defense of its regulatory powers in these appeals. See Wyo. Stat. Ann. §§ 24–9–101 and 18–3–504(a)(vi) (LexisNexis 2007).

[¶ 10] The Fortaks did not challenge the Board's acting as the principal respondent in the district court proceedings, and they do not challenge its role as Appellee in this appeal. We do not consider this a circumstance that deprives this Court of its jurisdiction to resolve this appeal and so we proceed to respond to the issues raised by the Fortaks, cautioning that both the district court and similarly situated parties need to be more attentive to the concerns we expressed above.

**The Standard of Review**

[¶ 11] In *Hoff v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2002 WY 129, 53 P.3d 107 (Wyo.2002), we reiterated the administrative agency action standard of review clarified in *Newman v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2002 WY 91, 49 P.3d 163 (Wyo.2002).

Judicial review of an agency action is directed by Wyo. Stat. Ann. § 16–3–114.

In appeals where both parties submit evidence at the administrative hearing, Newman mandates that appellate review be limited to application of the substantial evidence test. This is true regardless of which party appeals from the agency decision. In addition, this court is required to review the entire record in making its ultimate determination on appeal.

The substantial evidence test to be applied is as follows: "In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence." *Newman*, at ¶ 12.

Even when the factual findings are found to be sufficient under the substantial evidence test, ... this court may be required to apply the arbitrary-and-capricious standard as a "safety net" to catch other agency action which prejudiced a party's substantial right to the administrative proceeding or which might be contrary to the other WAPA review standards. [Newman provides a] purely demonstrative listing ... of situations which could warrant the consideration of the arbitrary-and-capricious standard in addition to the substantial evidence test. However, this appeal presents no such unique circumstances.

*Hoff,* 2002 WY 129, ¶¶ 5–8, 53 P.3d 107 (footnotes and some citations omitted). This private road appeal presents no unique circumstances; therefore, we apply only the substantial evidence analysis.

*Elk Horn Ranch v. Board of County Com'rs,* 2002 WY 167 ¶ 7, 57 P.3d 1218, 1222 (Wyo. 2002).

**The Road not Taken**

[¶ 12]   The principal source of controversy in this case is that there were two roads/routes already in existence and available for the Cragos to use. Indeed, the record suggests that they used both roads from time to time. The westerly route (also called Route # 1) ran very near to the Fortaks' home, yard, building site for their retirement home, corrals, and calving area. The reason the Fortaks denied the Cragos the use of the road was because that use also brought with it an ever-increasing proliferation of traffic (especially hunters), car lights (in the early and late hours of the day), dust, and noise to their farmstead. The Fortaks felt justified in denying use of their road to the Cragos (and their visitors) because there was another road only a very short distance away to the east that ameliorated those problems, but still allowed them access to their home and ranch (the easterly route or Route # 2). However, it had several shortcomings in the eyes of the Cragos, the viewers and appraisers, and the Board. Those shortcomings were that it was not as safe and was somewhat more circuitous and lengthy than Route # 1. In addition, it was only 16 feet wide as it crossed a reservoir along its way. Route # 2 was established under the private road statute in 2000. That action was filed before the 2000 amendments to § 24–9–101 became effective, and the parties stipulated that the former statute would govern in that case, when it was tried after the effective date of the revised statute. *Elk Horn Ranch v. Croell Redi Mix, Inc.,* 2002 WY 167, ¶ 3, 57 P.3d 1218, 1221 (Wyo.2002).[3]

[¶ 13]   Against this background, the Fortaks assert that the statute requires the viewers and appraisers to recommend "the most reasonable and convenient route," as well as to locate the road so as to do the "least possible damage to the lands through which the private road passes." The Fortaks contend that the Board focused on the reasonableness and convenience of the road vis-à-vis the Cragos, without really considering its reasonableness and convenience as to the Fortaks. They also contend that the Board focused on possible expenses that the Cragos would incur if Route # 2 were designated as the private road available to them, rather than the damage to the Fortaks' property if Route # 1 was used. The Fortaks believed that their property would be seriously damaged by the Cragos' use of the road past their home, whereas they waived any damages at all if the Cragos accepted Route # 2. It is also apparent that the Board appeared to interpret the governing statute to *require* a 30–foot wide easement, rather than to recognize that it prohibited the easement from being *more* than 30 feet wide. One of the central reasons the Board gave for rejecting Route # 2 was that it would cost $60,000.00 to widen it as it crossed the reservoir, as well as to make a few other changes. On Route # 1, the costs of changes and improvements deemed necessary by the viewers and appraisers were projected to be only $16,800.00.[4] The Board made detailed findings, and we set out below the ones pertinent to this appeal:

d) The most convenient road to the [Cragos] is Route # 1, as stated by the [Cragos] and the viewers and appraisers report and testimony.

e) There is no difference in distance to [the boundary of Cragos] real property from the State Highway.

f) It is approximately (7) tenths of a mile across [the Fortaks], on either Route # 1 or Route # 2.

g) It is 1.4 miles longer for the [Cragos] to get to their homesite by using Route # 2 rather than Route # 1 [the 1.4 mile difference is transversed solely on the Cra-

---

**3.**   The Board of County Commissioners is included as an Appellee in the caption of that case (erroneously), but did not participate in the appeal.

**4.**   As we also note later, ultimately the Board rejected any improvements to either road.

gos property]. This is due to the hills, ridge and canyon on the [Cragos'] property.

h) The least expensive route to the [Cragos], in view of construction and maintenance of the road from their home, is Route # 1. [The Fortaks] did not deny this fact. The [Cragos] would have to spend upwards of $60,000.00 to improve Route # 2 across the [Cragos], [the Fortaks] and the State land to make the route usable year round since Route # 2 needs to be graded, drained and aligned across the dam.

i) Route # 2 ... across the [Cragos], [Fortaks] and the State land is a haul road used by large trucks to haul sand from the Croell Redi–Mix sand pit.

j) Route # 1 is currently not a haul road. It has been used as a haul road in the past but is no longer used as a haul road.

k) Route # 1 was the [Cragos'] traditional access to their property and was used by them for about 50 years.

l) Route # 1 has not substantially changed in location in the past 50 years except to move away from the buildings that are now occupied by the Fortaks on the Elk Horn Ranch, Inc., property.

m) Route # 1 has been improved into an all weather graveled road over the last 50 years by the [Cragos] and their family, by the Fortaks, by the previous owners of the Elk Horn Ranches, Inc., by the previous users of the Croell Redi–Mix sand pit, Riley Sand & Gravel and by Croell Redi–Mix until they obtained a private road over Route # 2 which Croell Redi–Mix currently uses as a haul road.

n) Route # 2 has been somewhat improved by Croell Redi–Mix over the last 2 years since its establishment as a Private Road No. 231.

o) Route # 1 is safer than Route # 2. Route # 2 is used for heavy trucks (commercial) and seasonal (summer) traffic. Route # 2 does not appear to be as safe as Route # 1 especially for use by the [Cragos] and their families. From the [video] tape it would appear that Route # 2 has very little engineering (grade, culverts, drainage) when it was built. The reservoir that Route # 2 crossed did not show it had any design for high water other than to run across the road. It appears to have been built as a dam and not a road. The dam could be lowered to make the road wider, and thus safer for vehicular traffic but it may damage the dam.

p) Route # 2 appears from the [video] tapes, the hearing and the viewers and appraisers report to be more likely than Route # 1 to have problems with snow and ice in winter limiting the [Cragos'] practical access to their property.

q) Route # 2 currently benefits the Croell Redi–Mix sand pit. Route # 1 does not benefit the Croell Redi–Mix sand pit nor any other sand pit or mining operation. Route # 1 cannot be used for access to the Croell Redi–Mix sand pit.

r) [The Fortaks] did not quantify the diminished value of their property.

s) [The Fortaks] did not make any claims for damages if Route # 2 was awarded.

t) Route # 1 is the route that the Fortaks use to get to the Elk Horn Ranch, Inc., headquarters and buildings.

u) [The Fortaks] claim that it would be more convenient for them if the [Cragos] used Route # 2 since Route # 1 goes through their calving and feeding area near their home. They also stated the dust, noise and headlights cause problems for them and their livestock.

v) The Viewers and Appraisers Report and their testimony discussed and analyzed the steepness, condition, safety, and problems with construction of both routes. They found that Route # 2 ran over a narrow earthen dam that would require work, and a cut through the ridge requiring heavy equipment and perhaps blasting. They found that it would be safer, cheaper and more reasonable and convenient for the [Cragos] to use Route # 1 rather than Route # 2.

w) The Viewers and Appraisers Report and testimony stated that Route # 1 would be the better route to use by the [Cragos]. Where the road actually passes through

the Elk Horn valley the noise and dust would still be about the same since the routes are not that far apart.

x) There is approximately $2,550.00 in damages to [The Cragos] property by making Route # 1 the Crago Private Road No. 242 based upon the viewers and Appraisers Report. We adopt this amount as the claims for damages since no other comparable evidence was presented. No damage amount was calculated for Route # 2 because they were waived by [The Fortaks] if the [Cragos] chose Route # 2 or if Route # 2 was selected.

[¶ 14] The viewers and appraisers had recommended damages in the amount of $2,550.00, a point that we will discuss more fully below. They also recommended some modifications to the road, but the Board rejected those. The Board also rejected recommendations that additional cattle guards be installed, that the County mandate additional graveling and other improvements, and that the Cragos be limited in the use of the road.

[¶ 15] After careful consideration of the evidence presented before the Board, we conclude that there is substantial evidence to support the Board's conclusion that the Cragos should be granted a private road over Route # 1. A specific concern expressed by the Fortaks is that there is not substantial evidence that Route # 1 was "safer" than Route # 2. Safety is not an item specifically enumerated by the statute. However, "safety" is certainly not excluded, and we conclude that it does fit within the descriptive terms "reasonable" and "convenient," i.e., a safe road is more reasonable and convenient than one that is unsafe. The testimony of the viewers and appraisers, the video tapes, and the findings detailed in their report constitute substantial evidence that Route # 1 was safer.

## Damages

[¶ 16] The viewers and appraisers found that the fair market value of the Fortaks' land was $2,000.00 per acre. They claim that there is not substantial evidence to support this finding. However, our review of the testimony reveals that there is substantial evidence on that point.

[¶ 17] The Fortaks also contend that the viewers and appraisers did not select the route that was most reasonable and convenient, and their findings to that effect are not supported by substantial evidence. Our reading of the record is that the focus of the viewers and appraisers was to select the most reasonable and convenient route. Much of the transcript, the video tapes, and many of the specific findings demonstrate that was a central concern of the process, and we conclude that substantial evidence supports the selection of Route # 1. In *Reidy v. Stratton Sheep Co.*, 2006 WY 69, ¶¶ 28–32, 135 P.3d 598, 608–10 (Wyo.2006) we held:

Consideration of convenience is demonstrated most clearly in *Wagstaff* [*v: Sublette County Bd. of Comm'rs*, 2002 WY 123, 53 P.3d 79 (Wyo.2002)]. The facts in *Wagstaff* were somewhat complicated, but they were key to our decision and bear repeating here:

Grindstone Cattle Company ("GCC") owns a piece of real property which is commonly known as "Scott's Place" and another parcel of real estate which is north and west of Scott's Place and is separated from Scott's Place by a strip of land owned by the State of Wyoming and the Bureau of Land Management ("BLM"). Wagstaffs own real property that adjoins Scott's Place to the south. A title search established there are no easements or rights of way of record evidencing any legally enforceable access to Scott's Place. While State Route 354 runs through Wagstaffs' property, it does not run through Scott's Place. For over fifty years, GCC and its predecessors have had permissive use of a mile long roadway traversing Wagstaffs' land to access their property from State Route 354.

*Wagstaff,* ¶ 3, 53 P.3d at 80.

The Board received evidence of other possible routes to the Scott's Place property. County Road 150, the "Pape Road," to the east of Scott's place, was deemed not to be a viable option because the Green River lies between Scott's

Place and the Pape Road, and there is no existing access without bridging across the river. The only other possible means of access would be from the west and north, which would require traveling an extra 35 miles on State Route 354, County Road 112, and County Road 115, and then traversing an additional 15 miles over dirt tracks across state and BLM property.

*Id.*, ¶ 8, 53 P.3d at 81. On appeal, Wagstaff claimed the circuitous route through GCC's other piece of property provided the statutory outlet to or connection with a public road. *Id.* In response to Wagstaff's argument, we stated:

Moreover, even if we were to hold that the unimproved dirt tracks on the State and BLM land constituted public roads, such a determination is not definitive in the analysis that must be made. As stated previously, the legislature in its enactment of § 24-9-101 intended that the term "outlet" be such that it affords the landowner access via a convenient public road and that convenience and reason prevail in the establishment of roads. While Wagstaffs argue that GCC should be required to use the route over the State and BLM unimproved dirt tracks because GCC could file a petition to require the needed maintenance on County Road 115 and the unimproved dirt tracks across the State and BLM property and spend additional monies to improve the State and BLM unimproved dirt tracks so they would be generally passable on a year round basis, requiring GCC to take such acts simply does not fall within the legislature's expressed intention.

*Id.*, ¶ 18, 53 P.3d at 84. Affirming the board, this Court agreed GCC should not be required to travel an extended route amounting to an additional fifty miles over roadways which were impassable for part of the year in lieu of establishing a mile long private road over Wagstaff's land. *Id.*, ¶ 3, 8, 20, 53 P.3d at 80-81, 84.

Although the legislature has amended other aspects of the statute, it has not done so to change our interpretation that convenience of the public road is a factor to be considered. If this Court had incorrectly interpreted the legislature's intent, "legislative action to clarify the statutes and correct the court's decision would seem a likely result." *Albertson's, Inc. v. City of Sheridan*, 2001 WY 98 ¶ 21, 33 P.3d 161 (Wyo.2001).

The convenience factor must, however, be applied judiciously. Wyo. Const. Art. I, § 32 mandates that in order to constitutionally justify a private condemnation of property, there must be necessity. Consequently, the inconvenience which would justify a private taking must be substantial. In fact, it must be so substantial it is functionally equivalent to necessity. Our case law bears this out. We have never approved a private road simply on the basis that it would be more convenient to the applicant than another already existing means of access. Rather, only when the record contains evidence showing the alternative access is obviously impractical and unreasonable has this Court approved the creation of a private road under the statutes.

Interpreting the statute to allow a finding of necessity when an applicant is seriously inconvenienced by an alternative route serves the purposes of the private road statute. The statutory private road procedure replaced the common law way of necessity as the means for a landlocked property owner to gain access to his property. *Ferguson [Ranch, Inc. v. Murray]*, 811 P.2d [287] at 290 [(Wyo.1991)]. The legislature enacted the private road statutes to ensure a landowner can use his property for "productive purposes" while providing compensation to the burdened landowners. *Id.* at 289, citing 2 Thompson on Real Property §§ 362-368 (1980 Repl). Stated another way, a private road granted pursuant to § 24-9-101, et. seq., allows the use and enjoyment of specific property by providing access. *Reaves [v. Riley]*, 782 P.2d [1136] at 1137 [(Wyo.1989)]. Thus, there is a "public good" consideration in granting a private road. We explained in *Hulse v. First Am. Title Co.*, 2001 WY 95, ¶¶ 30-33, 33 P.3d 122, 132-33 (Wyo.2001) (some citations omitted):

[T]here is a public interest in giving access by individuals to the road and highway network of the state as a part and an extension thereof for economic reasons and the development of land as a resource for the common good, whether residential or otherwise.

* * *

Moreover, this court has held the right to condemn a way of necessity under constitutional and statutory provisions is an expression of public policy against landlocking property and rendering it useless. As a consequence, the statute provides that any grant of a private road under its provisions requires a finding by the board that the property owner seeking its creation has no legally enforceable access to a public road and that the private road is "necessary" before it may enter its order declaring the creation of the private road. Wyo. Stat. Ann. §§ 24-9-101-103.

If the purposes of the statute are to be served, we must take into account instances of substantial inconvenience. We have recognized this concept in choosing between alternative routes when we have refused to require a landlocked property owner to choose a "wholly illogical, uneconomic, and unproductive road." *Ferguson*, 811 P.2d at 290. See also, *Martens v. Johnson County Bd. of Comm'rs*, 954 P.2d 375, 380 (Wyo.1998). Furthermore, we have refused to require private road applicants to overcome all obstacles before petitioning for a private road, *Walton v. Dana*, 609 P.2d 461, 463 (Wyo.1980), or to consider routes in other counties, *Lindt v. Murray*, 895 P.2d 459, 463 (Wyo.1995). These cases indicate that the statute must be interpreted practically and support our holding that a showing of substantial inconvenience may satisfy the necessity requirement of the private road statute. See also, *Peery v. Hill*, 275 Ky. 105, 120 S.W.2d 762, 764 (1938) (holding under the Kentucky private road statute, an applicant had proven necessity when he showed

practical necessity): See M. DiSabatino, *Way of Necessity Over Another's Land, Where a Means of Access Does Exist, But is Claimed to be Inadequate, Inconvenient, Difficult, or Costly*, 10 A.L.R.4th 447 (1981), and cases cited therein.

[¶ 18] It is evident from the record on appeal that the Board (and the viewers and appraisers) had to make a difficult decision between two roads. One eminently viable and the other just barely viable. We will not second guess their ultimate decision, and we conclude that their decision is supported by substantial evidence.

■ [¶ 19] However, the damage determination made by the Board (and the viewers and appraisers) has some significant flaws that we cannot ignore. The figure $2,550.00 was arrived at by this method of reasoning: They applied the "before and after" method of appraisal by accepting that the value of the ranch was $2,000.00 per acre to ascertain the "before" value ($2,000.00 × 3,526 acres = $7,052,000.00). To obtain the "after" valuation, they determined that some modifications were needed to improve the road, and that those modifications would use up 2.55 acres of ground. They then did this calculation: 2.55 acres × $2,000.00 = $5,100.00. Because the Fortaks and Cragos would share the road, they divided that number in two to get the damages of $2,550.00.[5] No damages were awarded for the length of the route because it was already "bought and paid for." Thus, the "after" value was simply the "before" minus $2,550.00.

[¶ 20] This is, of course, not a "before and after" appraisal by any stretch of the meaning of that phrase. Relevant authority indicates that "before and after" appraisal is a phrase of art in the appraisal business. See 4 *Nichols on Eminent Domain*, § 13.0117 (Appraisal Techniques for Partial Takings) (2003); and 32 Am.Jur. Proof of Facts 3d 405, *Inverse Condemnation by Physical Invasion*, § 17 (Elements of damages; checklist [e.g., Value of land together with fixtures;

5. In any event, the Commissioners may not divide the assessed damages by two, merely because the Fortaks get a one-half share of use in the road. Before the Commissioners' action, the

Fortaks were at liberty to use that land for any purpose they desired, and now it is dedicated for use as a road.

Relative worthlessness of remainder; Annoyance and inconvenience from invasion, such as noise, vibrations, dirt or dust, smoke, or odors; Lessened value as site for purposes of which land was being used]) (1995). An example of a "before and after" appraisal is found in the record. However, that appraisal was done for the Croell Redi–Mix Road and does not pertain directly to the instant case. It could have served as a template for someone else doing a similar appraisal, but it was not. That appraisal determined that the "before and after" damage appraisal revealed a value of $316,000.00 in damages. That perhaps stands at the other end of the spectrum of values pertinent to this issue, but the viewers and appraisers were not instructed how to do a "before and after appraisal," they apparently made no effort to discern a proper methodology, and the one that was actually employed told the Board nothing about the "before and after" values of the Fortaks' property. To complicate this somewhat further, the Board adopted the findings of the viewers and appraisers that the damages were $2,550.00, even though they rejected the recommendation of the viewers and appraisers that the road be modified, which was the source of the $2,550.00 figure. Thus, in the end, the damages awarded did not relate in any rational way to the sort of damages contemplated by the governing statute.

## CONCLUSION

[¶ 21] Although this appeal and the proceedings in the district court had an improper party included (the Board), and the proper party did not participate (the Cragos), we nonetheless conclude that we should respond to the issues raised, at least in part.

[¶ 22] The Fortaks are correct that the award of damages is not a "before and after" award of damages as contemplated by the governing statute or as contemplated by our previous cases that have dealt with this subject. Indeed, the award of damages has no apparent basis in the facts and circumstances of this case. For this reason, the order of the district court affirming the Board's award of damages is reversed. As did the district court, we also affirm the decision of

the Board establishing the private road over Route # 1. The matter is remanded to the district court with directions that it be further remanded to the Board of County Commissioners to once again begin the process of having the viewers and appraisers make a "before and after" determination of the Fortaks' damages, consistent with this opinion, the governing statute, and the generally accepted appraisal techniques.