**IN THE SUPREME COURT, STATE OF WYOMING**

**2016 WY 63**

**APRIL TERM, A.D. 2016**

*June 27, 2016*

JASON JOHN THORNOCK and TRACY
THORNOCK,

Appellants
(Plaintiffs),

v.

ERICK W. ESTERHOLDT, as Trustee of
the Erick W. Esterholdt Revocable Trust
Dated August 6, 2009; and JEANNE M.
ESTERHOLDT, as Trustee of the Jeanne
M. Esterholdt Revocable Trust dated
August 6, 2009; and JOHN A. REED, III,
and CAROLYN B. REED; and UNION
PACIFIC RAILROAD COMPANY, a
Delaware Corporation; and PACIFICORP,
an Oregon Company; and RICHARD
DAYTON; and ROBERTS RANCH; and
REED LAND & CATTLE CO., LLP; and
NK COOK RANCH, LLC; and
FREDERIC C. REED as Trustee of the
Frederic C. Reed Revocable Trust,

Appellees
(Defendants).

S-15-0273

*Appeal from the District Court of Lincoln County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellants:*
David M. Clark of Greear Clark King, P.C., Worland, WY.

*Representing Appellees Erick W. and Jeanne M. Esterholdt, John A. and Carolyn B. Reed, III, Frederic C. Reed and Reed Land & Cattle Co., LLP:*
    Sharon M. Rose of The Rose Law Firm, PC, Evanston, WY.

*Representing Appellees Union Pacific Railroad Company, Pacificorp, Richard Dayton, Roberts Ranch and NK Cook Ranch, LLC:*
    No appearance.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Jason and Tracy Thornock filed a complaint alleging their Lincoln County property is landlocked and requesting establishment of a private road, naming as defendants those neighboring landowners whose property might be affected by the road. Following a bench trial, the district court ruled that Thornocks' property is not landlocked, and on that basis, the court denied the request to establish a private road.  We affirm.

## ISSUES

[¶2]    Thornocks present two issues on appeal, and they state those issues as:

> A.      Whether the Poison Creek Road, which is accessible only to Thornocks and their invitees, is a public road for purposes of W.S. § 24-9-101, *et seq.*
> B.      Whether the construction of a road across a natural barrier connecting two parcels of land owned by Thornocks would be unreasonably costly, given the evidence presented with respect to the costs and feasibility of construction and expected economic benefit to the parcel to be accessed.

[¶3]    The Appellee landowners state the issues similarly and add the following additional issue:

> Whether a private road may be established to remedy access difficulties related to barriers within the applicant's own land.

## FACTS

[¶4]    In January 2008, Jason and Tracy Thornock purchased the Thornock Ranch from Jason Thornock's parents for $850,000.00.  The ranch is located in Lincoln County, Wyoming, west and northwest of the town of Cokeville, and consists of 2,665.49 acres of fee land, as well as federal and state grazing leases for which the fee land is the base property.  A property appraisal done in 2007 just prior to Thornocks' purchase of the ranch valued the ranch at $2,100,000.00 and noted that access to the property "is considered to be good."

[¶5]    Thornocks' fee land generally consists of two larger parcels connected by a narrow strip of land.  The northern parcel is roughly 1,700 acres in size and the southern parcel is somewhat smaller.  The strip of fee land that connects the two parcels is a little under one mile long and two hundred feet wide and connects the two parcels east of the

1

centerline of each parcel. The strip of land is bordered on the east by the Bear River and on the west by federal land.

[¶6]   An existing road known as Poison Creek Road connects Thornocks' southern parcel with County Road 207. Poison Creek Road begins at County Road 207 and crosses two pieces of private property before entering Thornocks' southern parcel. Thornocks have easements on each of those properties, which allow them to use Poison Creek Road to cross the properties for access to their southern parcel. Poison Creek Road crosses Thornocks' southern parcel heading in a northerly direction. It then exits Thornocks' southern parcel and crosses first about one-half mile of state land and then about one mile of federal land before connecting with Thornocks' northern parcel.

[¶7]   Through their attorney, Thornocks contacted the Bureau of Land Management (BLM) concerning any restrictions on the use of Poison Creek Road where it crosses federal lands. The BLM advised Thornocks' attorney: "As you already know, landowners do have rights of ingress/egress. For any type of maintenance on the road a formal right-of-way application for a right-of-way across public lands would be required." The BLM further advised that it considered Poison Creek Road where it crosses federal lands to be open to the public for recreational use but any commercial use would require an appropriate right-of-way or permit. Thornocks were advised the restrictions and requirements for commercial use and maintenance of Poison Creek Road where it crosses state lands would be similar to the federal requirements.

[¶8]   In 2010, Thornocks installed a pivot irrigation system on their northern parcel, and in 2012, they installed a second pivot on the northern parcel. The installation of the pivots allowed Thornocks to grow hay on the northern parcel and increase grazing on that parcel, which in turn created a need to access the northern parcel with heavy equipment, including balers, swathers, and semitrailers. Contending that Poison Creek Road was not a public road and was not adequate for the type of access Thornocks required for the northern parcel after the pivot installations, and further contending that the terrain of the strip of Thornock land connecting the two parcels made construction of a road on that land impractical and unreasonably costly, Thornocks, on September 17, 2013, filed a complaint in district court seeking establishment of a private road.

[¶9]   On December 16, 2013, Thornocks filed an amended complaint naming as defendants all landowners whose property might be affected by the requested private road. On January 28, 2014, Defendants Erick W. Esterholdt and Jeanne M. Esterholdt moved for summary judgment and requested that the district court rule as a matter of law that a natural barrier occurring on a private road on applicant's own land cannot be the basis for a private road application. On February 18, 2014, the court held a hearing and denied the motion after finding that there were disputed issues of fact concerning the viability of a road on the strip of connecting land.

2

[¶10]  On May 5, 2014, pursuant to the parties' joint motion, the district court appointed an expert to evaluate the costs associated with building a road on the strip of Thornock land that connects their southern and northern parcels.  On November 21, 2014, the expert issued the report, which estimated the cost of such a road at $973,836.70.  The elevated cost of the road was owing to the steepness and difficulty of the terrain and the proximity to the Bear River.

[¶11]  On June 22, 2015, a bench trial was held on the question of whether Thornocks' northern parcel was landlocked.  On September 15, 2015, the district court issued its Findings of Fact, Conclusions of Law, and Order on Landlock Hearing.  The court concluded that Thornocks had failed to establish the need for a private road because they had not established that they were landlocked or that their access was substantially inconvenient, and it denied their complaint for establishment of a private road.  In summarizing its ruling, the court explained:

> The question of whether a private road is necessary begins with a determination of whether the parcel of land has an outlet or connection with a public road.  W.S. § 24-9-101(a).  In this case, Thornocks' northern parcel has a connection with a public road on two fronts.  First, the characteristics of Poison Creek Road make it a public road. Second, access to a public road could be built across the natural barrier of the middle strip.  The evidence did not demonstrate that such a project would be unreasonably costly. Because Thornocks' northern parcel has access, it is not landlocked.

[¶12]  Thornocks filed a timely notice of appeal to this Court.

## STANDARD OF REVIEW

[¶13]  Our standard of review following a bench trial is as follows:

> When reviewing a bench trial, this Court reviews the trial court's findings of fact for clear error and its conclusions of law *de novo. Moore v. Wolititch*, 2015 WY 11, ¶ 9, 341 P.3d 421, 423 (Wyo.2015). Additionally,
>
>> [t]he factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of

3

> the trial judge to assess the credibility of the witnesses, and our review does not entail reweighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.
>
> *Id*. (quoting *Miner v. Jesse & Grace, LLC*, 2014 WY 17, ¶ 17, 317 P.3d 1124, 1131 (Wyo.2014)). "'We assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it.'" *Id*., ¶ 10, 341 P.3d at 423 (quoting *Miner*, ¶ 17, 317 P.3d at 1131).

*Wimer v. Cook*, 2016 WY 29, ¶ 9, 369 P.3d 210, 215 (Wyo. 2016).

## DISCUSSION

[¶14]  Thornocks contend that the district court erred in ruling that their northern parcel is not landlocked and that they had not therefore made the required showing of necessity to support their private road complaint.  In so arguing, they challenge the court's finding that Poison Creek Road is a public road as well as the court's finding that construction of a road on the strip of Thornock land connecting their two parcels is not unreasonably costly.  Because we find that the court's conclusions regarding Poison Creek Road are supported by both the law and the record, we uphold the district court's ruling.

### A.    Legal Framework Governing Private Road Application

[¶15] Wyoming's private road statute was enacted to ensure that a landowner who otherwise has no access to his property is able to use his land for productive purposes. *Ferguson Ranch, Inc. v. Murray*, 811 P.2d 287, 289 (Wyo. 1991) (quoting 2 Thompson on Real Property §§ 362–368 (1980 Repl.)); *see also Hulse v. First Am. Title Co.*, 2001 WY 95, ¶ 33, 33 P.3d 122, 133 (Wyo. 2001) (private road statute serves "public policy against landlocking property and rendering it useless."). The statute outlines the circumstances under which a private road will be considered and the information required to support a private road complaint, providing in relevant part:

> (a)    Any person whose land has no outlet to, nor connection with a public road, may commence an action in district court in any county in which any part of the land is located for a private road leading from his land to some convenient public road. The plaintiff shall join as defendants

4

the owners of record, owners of recorded easements and rights of way and any lessee, mortgagee or occupant of the land over which any proposed road would cross. The complaint shall contain a short and plain statement of:

> (i) The legal description of the land owned by the plaintiff to which access is sought and a statement that all or some of the land is located within the county;

> (ii) A specific statement as to why the land has no legally enforceable access, other than a waterway, and whether the land is surrounded on all sides by land owned by another person or persons or a natural or man-made barrier making access unreasonably costly;

> (iii) A description of the plaintiff's efforts to purchase a legally enforceable access to a public road;

> (iv) A description sufficient to identify the general location of any access routes proposed by the plaintiff;

> (v) The legal description of all land over which any proposed access routes would cross; and

> (vi) A statement as to whether any actions of the plaintiff or any person with the consent and knowledge of the plaintiff, caused the plaintiff's land to lose or to not have any legally enforceable access.

Wyo. Stat. Ann. § 24-9-101(a) (LexisNexis 2015).

[¶16] The private road statute is intended to provide "a readily available, economically affordable, and time efficient method to obtain a means of access to property." *In re Gallagher*, 2011 WY 112, ¶ 15, 256 P.3d 522, 525 (Wyo. 2011) (quoting *Martens v. Johnson County Board of Comm'rs*, 954 P.2d 375, 380 (Wyo. 1998)). The taking of property for a private road is, however, constitutionally restricted, and any private road applicant must make a threshold showing that the road is a necessity. *Reidy v. Stratton Sheep Co.*, 2006 WY 69, ¶ 11, 135 P.3d 598, 604 (Wyo. 2006); *see also Price v. Hutchinson*, 2014 WY 162, ¶ 28, 340 P.3d 1002, 1011 (Wyo. 2014) (quoting *Crago v. Bd. of County Comm'rs*, 2007 WY 158, ¶ 17, 168 P.3d 845, 854 (Wyo. 2007)) ("Wyo. Const. Art. I, § 32 mandates that in order to constitutionally justify a private condemnation of property, there must be necessity.").

[¶17]  To establish the requisite necessity, a private road applicant must show that his property is landlocked, that is that the property "has no legally enforceable means of access to a public road."  *Altaffer v. Cross*, 2013 WY 79, ¶ 9, 304 P.3d 932, 935 (Wyo. 2013); *see also Crago*, ¶ 6, 168 P.3d at 849 (quoting *Pine Bar Ranch, LLC v. Luther*, 2007 WY 35, ¶ 9, 152 P.3d 1062, 1066 (Wyo. 2007)) ("[O]nce a landowner has proved that he has no 'legally enforceable means by which he can gain access' to a public road, then he has demonstrated the 'necessity' for a private road.").  We have clarified that the requirement of a legally enforceable outlet or connection to a public road is relevant only if the applicant's property does not have direct access to a public road.

> The "legally enforceable" inquiry is relevant only in determining whether a person has such a connection with, or outlet to, a public road.  *See*, *e.g.*, *McGuire*, 608 P.2d at 1286; *Reaves v. Riley*, 782 P.2d 1136 (Wyo.1989).  However, if a landowner has direct access to a "public road" under our statute, the question of legal enforceability is irrelevant and a private road is not necessary.

*Reidy*, ¶ 24, 135 P.3d at 607.

[¶18]  The necessity inquiry does not end with a finding of access to a public road.  The convenience of using that available public road is also a factor in determining the necessity of a private road.  *Reidy*, ¶ 27, 135 P.3d at 608.  We have explained, however, that the inconvenience that must be shown to prove necessity despite public road access must be substantial:

> The convenience factor must, however, be applied judiciously. Wyo. Const. Art. I, § 32 mandates that in order to constitutionally justify a private condemnation of property, there must be necessity. Consequently, the inconvenience which would justify a private taking must be substantial.  In fact, it must be so substantial it is functionally equivalent to necessity. Our case law bears this out. ***We have never approved a private road simply on the basis that it would be more convenient to the applicant than another already existing means of access.*** Rather, only when the record contains evidence showing the alternative access is obviously impractical and unreasonable has this Court approved the creation of a private road under the statutes.

*Price*, ¶ 28, 340 P.3d at 1011-12 (quoting *Crago*, ¶ 17, 168 P.3d at 854) (emphasis in original).

6

[¶19]  From the private road statute and our cases interpreting that statute, we draw the following framework to determine whether a private road applicant has established the necessity of a private road:

>    1)      Does the private road applicant's property have direct access to a public road or a legally enforceable connection with or outlet to a public road?
>    2)      Does that public road provide convenient and reasonable access to the applicant's property?

[¶20]  If both questions are answered in the affirmative, the private road applicant has failed to establish the necessity of the requested private road.  We turn then to our review of the district court's findings in regard to each of these questions.

## B.      **Application of Legal Framework**

[¶21]  The district court found that Poison Creek Road is a public road, and it concluded that because Thornocks' northern parcel has direct access to Poison Creek Road, the northern parcel is not landlocked.  Thornocks do not dispute that their northern parcel has direct access to Poison Creek Road.  What they do dispute is the finding that Poison Creek Road is a public road and the conclusion that Poison Creek Road provides them the type of access to their northern parcel to which they are entitled.  The determinations we must make then are: 1) whether the record supports the district court's conclusion that Poison Creek Road is a public road; and 2) whether Poison Creek Road provides Thornocks' adequate access to their northern parcel.

### *Poison Creek Road as Public Road*

[¶22]  We have defined a public road as "one that the public generally—not merely a portion of the public—is privileged to use."  *Reidy*, ¶ 13, 135 P.3d at 605 (quoting *McGuire v. McGuire*, 608 P.2d 1278, 1288 (Wyo. 1980)).  We have further held, as a matter of law, that "a road over federal lands may be considered a public road within the meaning of our private road statutes, provided the characteristics of the road indicate it is available to the general public."  *Id*., ¶ 19, 135 P.3d at 606.

[¶23]  The portion of Poison Creek Road at issue crosses state and federal lands before entering Thornocks' northern parcel so the question is whether the road's characteristics indicate it is available to the general public.  The BLM has categorized the portion of Poison Creek Road that crosses the federal lands between Thornocks' southern and northern parcels as a two-track road that is not maintained by the BLM but which exists and is open to the public for casual or recreational use.  The record contains no similar categorization from the State of Wyoming concerning the specific state lands and road in question, but Wyoming's state land rules do specify that state lands and roads on those lands are open to the public for casual recreational use, unless the lands or roads are

7

closed by order of the State Board of Land Commissioners. *Rules and Regulations, Bd. of Land Comm'rs*, Ch. 13, §§ 3-5 (April 28, 1993). The record contains no evidence that the Board of Land Commissioners has ordered closure of Poison Creek Road or the state lands it crosses. It would appear then that Poison Creek Road, as it runs between Thornocks' southern and northern parcels, is a public road—that is, "one that the public generally—not merely a portion of the public—is privileged to use." *Reidy*, ¶ 13, 135 P.3d at 605.[1]

[¶24] Thornocks offer two arguments against this conclusion. First, they argue Poison Creek Road is not a public road as it runs between their two parcels because they control access to the road and only allow individuals who obtain permission from them to use the road. Because Thornocks control access to the road, they contend the road is not one that the public generally is privileged to use. The district court rejected this argument, and we must agree.

[¶25] A road may be public over portions of its course and private over other portions of its course, and the private portions do not change the character of the public portions. *See Miller v. Bradley*, 4 P.3d 882, 889 (Wyo. 2000) (acknowledging road in question was private in parts but concluding portion to which applicant sought connection was public road). The record is clear that the BLM and the State consider Poison Creek Road, as it runs between Thornocks' two parcels, to be a public road, open for use by the public generally rather than merely by a portion of the public. This is not altered by the fact that Thornocks control access to the road. Moreover, Thornocks themselves have unfettered access to Poison Creek Road between their two parcels. Thus, while Thornocks' gatekeeping actions may, as a practical matter, change who in fact uses Poison Creek Road between their parcels, their actions do not change the public character of the road or Thornocks' own ability to use it as a public road.[2]

[¶26] Thornocks next argue that Poison Creek Road is not available to the public generally because recreational users are allowed to use the road, while commercial users are restricted. This is a creative argument, but we again must reject it.

---

[1] Thornocks asserted in their briefing to this Court that the State of Wyoming does not consider Poison Creek Road a public road, but they provide no record citation to support this assertion and we were unable to find any such indication in our review of the record.

[2] It is also worth noting that a factor the private road statute requires a court to consider in determining necessity is the extent to which the applicant's own actions contributed to the loss of access. *See* Wyo. Stat. Ann. § 24-9-101(a) (requiring disclosure of any actions of road applicant that caused the applicant's loss of access). Thus, if an applicant's own behavior were to change the public character of an access road, this would seem to do little to enhance a showing of necessity given that the applicant then would have caused his own landlocking.

[¶27] Neither the BLM nor the State bars any member of the public from using Poison Creek Road. What the governing agencies restrict is not who uses the road, but rather the manner in which the road is used. We are not persuaded that conditions or restrictions on the manner in which the public is permitted to use a public road alters the public character of the road. Thornocks cite no authority to support this proposition, and in our own decisions, our determination of whether a road is public has focused on who is allowed to use the road, not on the manner in which they are allowed to use the road. For example, in *Pine Bar Ranch*, we found the access road in question was not a public road based on the limited class of individuals allowed to use the road.

> Unlike the "voluminous testimony and documentary evidence" presented in *Reidy* indicating the road was open to the general public, the evidence presented in this case indicates that the use of the Surrell Creek Road was limited to employees, former employees, and family members of the LHart Ranch.

*Pine Bar Ranch*, ¶ 15, 152 P.3d at 1069; *see also Wagstaff v. Sublette County Bd. of County Comm'rs*, 2002 WY 123, ¶ 17, 53 P.3d 79, 83-84 (Wyo. 2002) (holding dirt track did not constitute public road because "no evidence was presented that the public generally has the privilege to traverse the unimproved dirt tracks on the State and BLM land involved.").

[¶28] While the conditions and restrictions the BLM and State have placed on the use of Poison Creek Road do not affect the road's status as a public road, they are relevant to the question of whether the access the road provides is adequate. We turn then to that part of our analysis.

### Adequacy of Access Provided by Poison Creek Road

[¶29] Thornocks installed pivot irrigation on their northern parcel in 2010 and 2012 and have since then used the property for haying, grazing, and recreational purposes, which are the same uses they intend for the property in the future. During the June 22, 2015 evidentiary hearing on this matter, Jason Thornock testified that he had used Poison Creek Road to access the northern parcel. When asked if he had also used Poison Creek Road to access the northern parcel with heavy equipment and to remove hay during the three to four years the property had been put to that use, Mr. Thornock repeatedly invoked his Fifth Amendment right to remain silent. Based on Mr. Thornock's invocation of his right to remain silent, the district court made the following finding, which Thornocks do not contest on appeal:

> This Court infers from his silence that Thornock has used the Poison Creek Road across state and BLM parcels for

commercial purposes. This Court is persuaded by *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976), that it may properly draw adverse inferences in a civil action when a party invokes the Fifth Amendment and refuses to answer questions.

[¶30] It is against this backdrop that we consider the district court's conclusion that Poison Creek Road provides Thornocks reasonable and convenient access to their northern parcel. Specifically, the court concluded:

> The Poison Creek Road is conducive to the productive use of the property. If Thornock desires to use a semi to haul cattle across the state and federal land that he has the exclusive permits to graze livestock on, it is reasonable that this Court require him to seek the appropriate permits rather than create a private road across the neighbor's land for that convenience. Thornock must pursue the legal permits for the commercial purposes he seeks when he clearly already has access. The road, which is difficult to travel in the winter, is never closed by BLM. * * *
>
> Thornock testified that he did not prefer access on the Poison Creek Road because such access would affect the marketability of his land. In other words, a title insurance company will not insure title on land with access across public land. Thornock's interest in obtaining a more convenient access or in obtaining title insurance to make the northern parcel more marketable does not outweigh the interest of the neighboring landowners to maintain property free from intrusion. The purpose of the private road statute is to create accessibility; it is not to create or improve marketability of land. Thornock's preference is not the same as a demonstration of substantial inconvenience.[3]

[¶31] Thornocks contend that the district court erred in concluding that Poison Creek Road provided adequate access to their northern parcel because the access they are entitled to is a legally enforceable right of access that is appurtenant to their property and Poison Creek Road does not provide them with that type of access. They further contend

---

[3] Thornocks asserted in the statement of facts portion of their brief that the condition of Poison Creek Road in the winter makes it unsuitable for their intended use of the northern parcel. They did not, however, develop this assertion into a necessity argument or even discuss the road's seasonal condition in their argument on necessity. We therefore need not address the winter condition of the road further, and for that reason, we omitted the district court's discussion of Poison Creek Road's winter condition from this quoted portion of the court's order.

that they are not required to obtain a commercial use permit in lieu of seeking a private road and if we were to uphold the district court's decision, it would require that we overturn our decision in *Voss v. Albany County Comm'rs*, 2003 WY 94, 74 P.3d 714 (Wyo. 2003). We disagree.

[¶32] In *Reidy*, we addressed arguments similar to those made by Thornocks. The road applicant in that case, Stratton Sheep Co., contended that a forest service road that adjoined its property did not provide legally adequate access to their property. *Reidy*, ¶ 23, 135 P.3d at 607. Relying on our holding in *Voss*, Stratton contended that the access it was entitled to under the private road statute is access that constitutes a legally enforceable right appurtenant to its property. *Id*. We rejected the argument, explaining:

> Stratton contends FS 807 is not a public road because it could be closed at some time in the future, and the access provided by the road, therefore, is not "legally enforceable" under the statute. The board's decision letter indicates it followed a similar rationale, stating: "[t]here is no legally enforceable right to use the Forest Road 807 by any member of the public according to the evidence." It appears this reasoning stems from a misreading of our opinion in *Voss* to the effect that the right to use a public road on federal land must be "legally enforceable." In *Voss*, we concluded a personal thirty year right-of-way grant/temporary use permit over BLM land was not "legally enforceable access" to the public road in question—a county road. *Voss*, ¶ 13, 74 P.3d at 719. By its terms, the grant terminated after thirty years and, although it was renewable at that time, renewal was not guaranteed. Furthermore, the permit was personal and did not "pass automatically upon conveyance of the property." *Id*. Instead, the grant was assignable only upon approval by the BLM. *Id*. Because it was obviously a personal right-of-way, we did not directly address the issue of whether the access road over BLM property in Voss was a public road.
>
> The "legally enforceable" inquiry is relevant only in determining whether a person has such a connection with, or outlet to, a public road. *See, e.g.*, *McGuire*, 608 P.2d at 1286; *Reaves v. Riley*, 782 P.2d 1136 (Wyo.1989). However, if a landowner has direct access to a "public road" under our statute, the question of legal enforceability is irrelevant and a private road is not necessary. Although we did not directly address this principle in *Voss*, we did recognize the underlying goal of the private road statute is to provide access

11

to the public road system. *Voss*, ¶ 32, 74 P.3d at 723–24. *See also*, *Miller v. Bradley*, 4 P.3d 882, 889 (Wyo.2000); *Dunning v. Ankney*, 936 P.2d 61, 64 (Wyo.1997). Because the record in this case demonstrates FS 807 is open to, and used by, the general public, it is distinguishable from *Voss*. No right of way is required to use FS 807 and, since it is open to the general public, there is no question about transferability of the right to use the road.

In determining FS 807 could not be considered a public road under our case law, the board misinterpreted our precedent. This Court has never held a road on federal property cannot be a public road under the private road statute. In fact, we held just the opposite in *McGuire*, which has never been overruled. To be completely clear, we hold, as a matter of law, roads over federal lands may be considered public roads under our private road statutes. Of course, the individual characteristics of each road will determine its status. In this case, when the correct rule of law is applied to the essentially undisputed facts, it is clear FS 807 is a public road. We conclude the board erred when it failed to recognize FS 807 as a public road and ruled that Stratton had proven necessity because its access via FS 807 was not "legally enforceable."

*Reidy*, ¶¶ 23-25, 135 P.3d at 607-08.

[¶33] The facts in the case before us are similar. As discussed earlier, Poison Creek Road is a public road and Thornocks are not required to use an outlet or connection to access it because their northern parcel adjoins and has direct access to the road. As in *Reidy*, the fact that Thornocks' right to use Poison Creek Road is not a legally enforceable right appurtenant to their property does not change the adequacy of the access it provides to their northern parcel.

[¶34] The fact that Thornocks must obtain a permit to lawfully use Poison Creek Road for commercial purposes likewise does not affect the adequacy of the access provided by the road. Thornocks have access to the road, and they presented no evidence that obtaining the commercial permit imposes a substantial burden on them or is "obviously impractical and unreasonable." *Price*, ¶ 28, 340 P.3d at 1012. In fact, Jason Thornock testified that his father used the same process to obtain commercial access and the right to improve a road over other federal property in the county.

[¶35] Finally, we agree with the district court that the negative effect on Thornocks' property values of having public road access to their property rather than legally enforceable access is irrelevant to the question of necessity under the private road statute. The statute is "an expression of public policy against landlocking property and rendering it useless." *Crago*, ¶ 17, 168 P.3d at 855 (quoting *Hulse*, ¶ 33, 33 P.3d at 133). The statute allows the taking of private property to protect against landlocking, not to improve the marketability of the road applicant's land.

[¶36] Because we uphold the district court's ruling on the basis that Thornocks have access to their northern parcel via a public road, we need not address the court's finding that construction of a road on the strip of land connecting Thornocks' southern and northern parcels would not be unreasonably costly. We likewise need not address the Appellees' additional issue of whether a natural barrier can be one that exists on the private road applicant's own land.

## CONCLUSION

[¶37] The record shows that Thornocks have direct access to their northern parcel via a public road that provides access that is both convenient and reasonable. The district court therefore correctly ruled that Thornocks' northern parcel is not landlocked and that they failed to establish the necessity for a private road. Affirmed.